## FERRY v. HENDERSON.

CONTRACTS; EVIDENCE; TRIAL; EXPERTS; BURDEN OF PROOF.

1. In an action to recover compensation for services in superintending the construction of a building, where the question is as to the reasonable value of the plaintiff's services, and it appears that the plaintiff during the time that he performed such services was a clerk in the office of the real-estate brokers of the defendant, and does not claim to have had any special qualification as a building superintendent or inspector, it is error for the trial court to refuse to allow the defendant to ask the plaintiff on cross-examination what salary he received as clerk.

2. Where it is questionable whether evidence sought to be introduced is competent or relevant, it is the duty of the party seeking to introduce it to state the special grounds constituting it an exception to the general rule; but where the competence or relevancy of the evidence is plain, it is not necessary to assign specific grounds of admissibility. (Distinguishing *DeForest* v. *United States,* 11 App. D. C. 458; and *Turner* v. *American Security & T. Co.* 29 App. D. C. 460; and citing *Washington Gaslight Co.* v. *Poore,* 3 App. D. C. 127.)

3. In an action to recover compensation for services in superintending the construction of a building, testimony of a builder who has qualified himself to testify as an expert, as to how much time a building superintendent should spend on a building to earn full compensation, and as to what, in his opinion, would be reasonable compensation for a superintendent who spent from half hour to an hour a day upon a building, is competent.

4. While the jury is not bound to adopt testimony of an expert testifying as to the value of services, such testimony is admissible in a proper case.

5. Where, in an action to recover for services rendered in the construction of a building, it appears that the defendants permitted the plaintiff to act as a superintendent, and did not complain of his incompetency, they cannot be heard to urge his want of qualification as a ground for refusing to pay for his services; and therefore it is not error for the trial court to refuse to permit the defendants to introduce evidence as to the necessary qualifications of a building superintendent.

6. An expert called by the defendant to testify as to the value of the services of the plaintiff, who had superintended the construction of a building, and who, it was claimed, had spent only one half hour to one hour daily in the work, should not be asked whether, under the circumstances, a person performing such services would be entitled to the full pay of a superintendent; but the question should be what, in his opinion, would be a reasonable compensation for a superintendent spending that time on the work.

7. In an action to recover compensation for services in superintending the construction of a building, it is not error for the trial court, at the request of the plaintiff, to instruct the jury that if they believe the defendants requested the plaintiff to do the work, then the burden is on the defendants to show that the plaintiff agreed to do the work without compensation.

No. 1889. Submitted May, 8, 1908.   Decided Nov. 4, 1908.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia on verdict in an action of assumpsit.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought by George Henderson against Joseph T. Ferry and J. Frank Ferry to recover the sum of $1,400 on account of services rendered by him in superintending the construction of a house for them, and money expended for them therein. The house was alleged to have cost $20,000, and the claim was for 10 per cent thereof, less a credit allowed of $600 for the services of the architect. Defendants denied making a promise as alleged, and any indebtedness on account of the said services.

Plaintiff's evidence tended to show that he superintended the

construction of the building at the request of defendants. That it cost $20,000 and the construction consumed about six months. That he visited the building every day, and sometimes two or three times a day. That he was usually there when the men commenced work, about 7:30 in the morning. That he got the payroll from the foreman, and paid the workmen with money furnished by defendants. That he procured releases of all claims for work and materials, of which there had been about twenty. That he arranged a difficulty about a party wall, paying an attorney engaged $100 of his own money. That his services were worth 10 per cent of the cost of the building, but as the architect had a contract for $600, he had allowed the same as credit on his claim.

Upon cross-examination he said that during the whole period he had been a clerk for R. E. Bradley, a real-estate agent, and was paid a salary for conducting his rental business. That he usually gave the hours from 9 A. M. until 5 P. M. to Bradley's service. Plaintiff was asked what salary he was paid by Bradley for his services. His counsel objected, without stating any ground of objection, nor did the defendants indicate the purpose of the evidence in reserving an exception to the refusal of the court to permit witness to answer. That he had no technical knowledge of building or architecture, and had never before superintended an entire building, but had considerable to do with repairs to buildings. That defendants were trustees for a number of buildings, the rents of which Bradley collected for them. Part of the expenditures on the building was paid out of these rents and charged in accounts rendered; the remainder furnished by defendants on request. The foreman was paid $1 per day extra, but not as superintendent. The architect visited the building, but how often plaintiff did not know. That all material was ordered through witness on request of the foreman. That about $400 monthly passed through Bradley's hands as rents collected for defendants.

Nicholas T. Haller, an architect, testified that 10 per cent was the usual and fair compensation for superintendence, and that a superintendent need not be experienced in building, or remain

practically all the time upon the building, but needed only to understand the plans and specifications; and that part of his duty would be to order materials.

Defendants' evidence tended to show that plaintiff had not been employed to superintend the construction of the building. That there was no usage or custom to pay building superintendents a commission, but by the day only. That the plaintiff did not exercise any authority over the building. That overlooking of the carpenters was done by the foreman, and the work of superintendence by the architect, who visited the premises daily, and sometimes twice a day.

Defendants called Joseph Richardson, who qualified as an expert builder, who said that the usual compensation of building superintendents is $6 per day. He was asked: (1) "What are the qualifications of a man in that work entitled to $6 per day?" (2) "To earn $6 per day, or to be entitled to that in the building trade, how much time should the superintendent spend on the building?" (3) (after having testified that the duties of a superintendent are to see that the work is properly carried on and plans and specifications adhered to) "To do that properly, how much time of the superintendent would be necessary?" (4) What, in your opinion, would be the reasonable compensation of a man as superintendent of a building, who should spend half an hour to an hour a day on the building?" These questions were objected to, no ground thereof being stated; nor did the defendants state what they expected the answers to be. The witness was not permitted to answer, and defendants excepted. Thomas F. Holden, also called by defendants, testified to long experience as a superintendent of building construction; that as a rule superintendents are paid by the day, at a rate of $5 per day for buildings of the kind in question; that they do no manual labor, but direct the mechanics as to how work should be done. He was then asked: (1) "What qualifications are necessary for such superintendents?" (2) "Assuming that a man, in superintending as you have indicated, was not required, on account of the job not being a very large job, to give his whole time to the superintendence, but only to

come in the mornings for a short time, and then again in the evening for a short time, and not always in the evening, and occasionally at some time during the day, but did not stay there all the time,—would he be entitled to the full pay of a superintendent, $5 a day?"

Plaintiff objected to each question as before, and the same were sustained, with exceptions noted.

The defendants excepted to the following special instruction given to the jury at plaintiff's request: "If you believe the defendants requested the plaintiff to do the work referred to in the evidence, then the burden of proof is upon the defendants to show that the plaintiff agreed to do such work without being paid therefor."

No exception was taken to any other part of the charge. The jury returned a verdict for plaintiff for $900; and from the judgment thereon defendants have appealed.

*Mr. George Francis Williams* and *Mr. Arthur A. Birney* for the appellants.

*Mr. Charles Poe* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It appears generally that the building was completed according to the plans and specifications, and that the construction was satisfactory to the defendants.

The question was not, then, as to the particular qualifications of the plaintiff for the duties of a superintendent of construction, but as to the reasonable value of his services. As the plaintiff was not a regular superintendent of building construction, but was engaged in the particular case while regularly performing his clerical duties for another, which occupied the bulk of every day that the construction was under way, and gave but a small part of his time each day to the matter of superintendence, it seems to us material that the jury should be

informed as to the salary he was receiving for his regular duties. Evidence on plaintiff's behalf tended to show that it was customary to pay a superintendent a percentage of the cost of the building. On the other hand, testimony tended to show that such services, when daily performed, were generally paid for by the day at a price ranging from $5 to $6. The jury did not allow the whole of the claim based on the percentage rate, but considerably less. They were not bound to accept the estimate of value fixed by witnesses, but had the right, which they evidently exercised, of determining the weight and force of all the evidence by their own general knowledge of the subject of inquiry. *Head* v. *Hargrave,* 105 U. S. 45, 49, 26 L. ed. 1028, 1030. Estimating the six months of construction at 180 days, the verdict for $900 may have been arrived at by allowing plaintiff $5 per day, without adding thereto the $100 which he paid to attorney, or the $50 of incidental expenses. While the jury were not bound to estimate the value of the services per day or per month by the salary received by plaintiff, yet, as defendants knew that he was performing services for them in addition to his regular employment by Bradley, who was their collecting agent, it was competent evidence for the consideration of the jury in determining the amount of their liability for his services. It is to be remembered that plaintiff did not claim to have any special qualifications as a building inspector. He did not pursue that occupation, and had no knowledge, from experience, of the value of an inspector's services. His regular occupation was clerical, and the value of his time as a clerk was determined by his salary. Moreover, the architect was paid, to his knowledge, $600 for similar services of superintendence during the same period, and this he thought fair to allow as a credit upon his own demand. Strange to say, the architect was not called as a witness by either party.

Plaintiff, who failed to assign any particular ground of objection to the competency or relevancy of the evidence sought to be elicited, now contends that it was the duty of the defendants to point out specifically, not only what were the grounds upon which they claimed the competency of this evidence, but also to

state what they expected to prove by the witnesses. It is true that, where evidence is generally incompetent or irrelevant, it is the duty of the party seeking to introduce it to state special grounds constituting it an exception to the general rule, so that the court may be fully informed in regard to the question which he is called upon to decide, as well as that opposing counsel may not be taken by surprise. This is not the case here, however. Plaintiff had testified to the other employment, and, of course, knew the amount of his salary. The relevancy of the question did not depend upon the amount of that salary, but its force and effect only as bearing on the question of the value of his services, which was for the jury to consider. Under the circumstances of the case, we think that the exception may be considered, and that the evidence was competent. The conditions are quite different from those of the cases relied on by plaintiff. *De Forest* v. *United States,* 11 App. D. C. 458, 460; *Turner* v. *American Security & T. Co.* 29 App. D. C. 460, 468. In the first of those cases, the party assigning error upon the admission of the testimony stated no ground of his objection. It was said that specific grounds of objection are required, so that they may appear on the record, and in order that the other party may have an opportunity to obviate them. Moreover, it was said: "Nor are we at all certain, from the circumstances of the record, that the testimony here in question was absolutely inadmissible." See also *Washington Gaslight Co.* v. *Poore,* 3 App. D. C. 127, 135. In *Turner* v. *American Security & T. Co.* supra, the trial court refused the offer of a witness to prove his opinion in respect of the competency of a testator. The introducer failed, however, to state what the opinion was that he wished an opportunity to introduce. Under the circumstances of that case it was held that it was the duty of the party to show what was that opinion, so that the appellate court might be able to determine whether the exclusion was in fact prejudicial.

The application of this strict rule necessarily depends upon the apparent character of the evidence and the circumstances of the case. When incompetency and irrelevancy are clear and

apparently insurmountable, it may not be necessary always to state the objections specifically. Nor where the competency or relevancy are alike plain, from all the circumstances, is it necessary to assign specific grounds of admissibility.

For substantially the same reasons, above given, we are of the opinion that there was error in sustaining objections to two of the questions propounded to the witness Richardson. These were: (1) "To earn the full compensation of a building superintendent how much time should he spend on the building?" (2) "What, in your opinion, would be the reasonable compensation of a superintendent of a building who should spend from half an hour to one hour a day upon a building?" Testimony of a competent person, as this witness had shown himself to be, is admissible on the subject of values of property, professional or personal services, and the like, where the same is the subject-matter of controversy. The matter to be determined here was the value of plaintiff's services during a certain period. Two grounds of estimating the same were before the jury, namely, the percentage and the *per diem* basis. It was for the jury to adopt either, and the amount of the verdict would seem to indicate the adoption of the latter. While they were not bound to adopt the testimony of a witness familiar with the necessary character and the value of such services, nevertheless the party was entitled to have it submitted to them as proper aid to the fair and intelligent consideration of the point at issue.

It was not error to refuse to permit evidence as to the necessary qualifications of a building superintendent. There was no question of competency or incompetency in the case. The work had been completed to the satisfaction of the defendants, whether due to the services of the plaintiff or not. If they were satisfied to permit him to act as superintendent, and had no complaint to make of incompetency, they could not be heard to urge his want of qualification as a ground for refusing to pay for his services.

The form of the second question to the witness Holden was objectionable. It should have been in the form of the one to

Richardson, as to the reasonable value of such services as had been rendered by the plaintiff.

We see no objection to the special instruction excepted to.

For the reasons assigned, the judgment will be reversed, with costs, and the case remanded for a new trial.        *Reversed.*