## McCLORY v. SCHNEIDER.

No. 3744.

Court of Civil Appeals of Texas. Amarillo.

June 8, 1932.

Rehearing Denied July 6, 1932.

to find a purchaser for the properties and assets of the refining and pipe line companies, who would be ready, able, and willing to purchase the assets of said companies at such price and upon such terms and conditions as might be acceptable to appellant; that at the time of making said contract, viz. February 21, 1929, plaintiff had no knowledge of the ownership of the assets of said corporations and did not know that they were, in fact, incorporated; that at the time of the employment defendant represented that he owned the properties which constituted the assets of said companies, and agreed to pay plaintiff a reasonable commission for procuring a purchaser therefor; that plaintiff procured the H. F. Wilcox Oil & Gas Company, which agreed to buy the capital stock from the stockholders of the three companies first above mentioned for a total consideration of $293,000, of which $138,137.03 was paid in oil and the remainder of $154,862.97 was paid in cash; that, in selling the corporate stock of said corporations to the H. F. Wilcox Oil & Gas Company, the plaintiff substantially complied with the terms of his agreement with the defendant, in that the purchase of the stock was a mere medium through which the H. F. Wilcox Oil & Gas Company acquired all of the physical assets and properties of said three corporations, and that the method of the consummation of the sale of such assets by defendant and his associates to such purchaser was immaterial; that plaintiff was the procuring cause of such sale, and as a result defendant became obligated and bound to pay him a reasonable commission, which he alleged to be 10 per cent. of the total sale price.

Plaintiff set out his cause of action in two counts, alleging substantially the same facts in each. By the first count he seeks to recover upon a contract, and by the second he prays for recovery on a quantum meruit for services rendered in selling the property, assets, and/or capital stock of the Grayco Gasoline Company.

The defendant, McClory, answered by general demurrer, general denial, and specially alleged that in March, 1929, he owned stock in the Pampa Refining Company, a Texas corporation, and was the manager of such refinery; that he made his home at the Schneider Hotel, which was managed and operated by plaintiff, and had no knowledge that plaintiff was engaged in the real estate business; that H. F. Wilcox, the president of the H. F. Wilcox Oil & Gas Company, was a stockholder in the Schneider Hotel Company, a corporation managed by plaintiff; that in March, 1929, plaintiff brought George A. Dye, vice president of the Wilcox Oil & Gas Company, out to the refinery, and in doing so it was at plaintiff's free and voluntary will and not at the instance or suggestion of the defendant; that later plaintiff offered the assets of the

Cook, Smith, Teed, Sturgeon & Wade, of Pampa, and Reeder & Reeder, of Amarillo, for appellant.

W. M. Lewright, of Pampa, for appellee.

HALL, C. J.

The appellee, Schneider, claiming commission as a broker, sued appellant, McClory, and nine other individuals to recover the sum of $29,300. Later he filed a first amended original petition in which he abandoned his suit against all of the defendants except the appellant, McClory, who he alleged was a stockholder, officer, and director of certain corporations, viz. Pampa Pipe Line Company, Pampa Refining Company, and Grayco Gasoline Company; that he employed plaintiff as broker

Pampa Refining Company to the Wilcox Oil & Gas Company for the sum of $500,000, which the latter declined to accept; that, in bringing Dye out to the refining plant in March, 1929, plaintiff acted as the agent of the Wilcox Oil & Gas Company and not as defendant's agent; that whatever was done by plaintiff was done voluntarily and by reason of his friendship for Dye and Wilcox; that, following plaintiff's visit with Dye to the refining plant, the defendant offered the Pampa Refining Company to Wilcox Oil & Gas Company for $500,000, which was not accepted, and thereafter plaintiff abandoned his efforts to sell such property; that the stockholders owning the capital stock of the three corporations sold their privately owned stock to the Wilcox Oil & Gas Company, and plaintiff was in no wise a party to such sale; and that whatever was done by the defendant was done as the agent of the three corporations.

Plaintiff filed a trial amendment in which, with reference to the alleged contract with defendant, he stated that some time between February 21 and March 15, 1929, defendant employed plaintiff as a broker to find a purchaser for the properties and assets of the Pampa Refining Company who would be ready, able, and willing to purchase its assets at a price and upon terms and conditions acceptable to defendant, and that at the time of making such agreement the refining company was the owner of or was then acquiring the properties subsequently known as the Pampa Pipe Line Company; the Pampa Refining Company having purchased said pipe line from the Bell Oil & Gas Company, which became an asset of the Pampa Refining Company from the date of its acquisition on March 4, 1929, to the date of the incorporation of the Pampa Pipe Line Company in July, 1929; that in employing the plaintiff the defendant expressly included therein the properties subsequently incorporated under the name of the Pampa Pipe Line Company.

During the trial plaintiff dismissed his cause of action in so far as he claimed commissions upon the sale of the assets and capital stock of the Grayco Gasoline Company.

The case was submitted to a jury upon special issues, in response to which the following verdict was returned: Alex Schneider, Jr., was not representing the H. F. Wilcox Oil & Gas Company in negotiating with McClory regarding the sale of the refinery and pipe line in question; the purchase by the Wilcox Company of the capital stock of the refining company and the pipe line company did not result solely and only from causes unrelated to and disconnected from the acts done and statements made by the plaintiff; the services performed by plaintiff in connection with the sale of the stock were not performed voluntarily and without expectation of payment; the defendant, McClory, on about February 21 to March 15, 1929, employed plaintiff, Schnei-

der, to procure a purchaser for the refinery and pipe line in question and on about said date agreed to pay plaintiff a reasonable commission for his services in procuring a purchaser therefor, and plaintiff was the procuring cause of the sale made by the stockholders of the two companies of the corporate stock to the Wilcox Company; that a reasonable commission to be paid the plaintiff is $20,000. Judgment was entered accordingly; hence this appeal.

The appellant's brief contains seventy-one propositions, but it will not be necessary to discuss each of the contentions separately.

■ Proposition No. 5 attacks the action of the court in permitting the witness Wilcox by deposition to answer the following question: "Please state whether or not at any time from the time that negotiations for the purchase of said properties were first opened with the officials of the Pampa Refining Company and its associated companies up to and including April 4, 1930, the H. F. Wilcox Oil & Gas Co. ever at any time considered that all negotiations had been concluded with reference to the purchase of said properties and if at any time it ceased to desire to acquire the same."

The court overruled the objection and permitted the answer of the witness to be read, as follows: "We were interested at all times but negotiations were dropped from time to time only to be brought up again due to our failure to get together on prices," etc.

By this question H. F. Wilcox is asked to testify whether all negotiations had ceased and as to the intentions of his company with reference to purchasing the properties of the refining company. Any answer must necessarily have been a conclusion drawn from the negotiations, conversations, letters, or other communications between the refining company and his company. What was said and done and the substance of such letters or conversations might have been admissible from which the jury could have concluded what the intentions of the Wilcox Oil & Gas Company were with reference to acquiring the property. The general rule is that a witness cannot testify as to the intent or motive of another. Robertson v. Gourley, 84 Tex. 575, 19 S. W. 1006; Dean v. Dean (Tex. Civ. App.) 214 S. W. 505. Wilcox, as a stockholder and even as a president of his oil and gas company, was a separate legal entity from the corporation, and while, under numerous circumstances, a witness may testify as to his own intentions, it is extending the rule too far to permit an officer of a corporation to testify as to the desires and intentions of his company with reference to the purchase of the property.

■ In transactions between parties, negotiated by a broker, conversations between the broker and either of the parties in the ab-

sence of the other, are held to be admissible upon the issue of procuring cause under the res gestæ rule. Res gestæ means thing done. A secret intent is certainly not res gestæ. In view of the finding that Schneider was the procuring cause of the sale to Wilcox, this evidence was prejudicial and tended to contradict Mr. Dye's letter of July 27, 1929. This also disposes of appellant's fourteenth and fifteenth propositions.

 The witness Dye was asked: "Please state whether or not prior to the time of your first trip to the town of Pampa, Texas, for the purpose of investigating the properties and assets of the Pampa Refining Company and its associate companies hereinabove referred to, you had any conversation with Mr. H. F. Wilcox, President of the H. F. Wilcox Oil & Gas Company, concerning the purchase by your company of these properties and if so, the substance of such conversation and state particularly whether or not Mr. Wilcox informed you as to how he had learned, if ne had, that the properties and assets of said corporations were subject to sale and might be acquired by your company."

The witness answered: "Yes, I had a conversation with Mr. Wilcox prior to my trip to the town of Pampa regarding the possibility of the purchase of the companies mentioned. He stated that he had been informed by Mr. Schneider that it was possible a deal could be made for the purchase of the companies mentioned."

This question requested the witness to detail the conversation which he, as an official in the Wilcox Company, had with Mr. Wilcox, and the answer is hearsay. It was permissible for Wilcox to testify that Schneider told him that a deal was possible, but Dye should not have been permitted to testify that Wilcox told him that Schneider had imparted the information. The conversation between the two was res inter alios acta, and was in no sense binding upon McClory. 17 Tex. Jur. 379. The issue as to who procured Wilcox or his company was a matter for the jury alone to decide, and even Wilcox would not be permitted to state that Schneider caused him to purchase the property. He could only state the facts; that is, the conversations, correspondence, etc., had with Schneider. Whether his purchase of the property was a result of these facts was a matter within the exclusive province of the jury to decide. Lumsden v. Jones (Tex. Civ. App.) 205 S. W. 375; Grogan v. Odell (Tex. Civ. App.) 141 S. W. 169.

 The seventeenth proposition is based upon the alleged error of the court in permitting the witness Dye, by depositions, to answer the following interrogatory: "Please state the reason for the acquisition by the H. F. Wilcox Oil & Gas Company of the capital stock of the three corporations herein-

above referred to rather than a direct purchase by the H. F. Wilcox Oil & Gas Company of the properties and assets of said three corporations and particularly please state whether or not at the time of the inception of the negotiations between your company and the officers of the three corporations, hereinabove referred to, the negotiations started with reference to the purchase of the assets and properties of said concerns or of the purchase by your company of the capital stock of said concerns."

The answer of the witness, which was also objected to, is as follows: "The reason for purchasing the capital stock of the three corporations was because we considered that as the easiest way to consummate the deal, as it eliminated the assignment of properties, leaseholds, etc., belonging to the selling companies and we thought it more advisable to acquire the stock, which in turn would include the entire assets, as it was our intent to continue to operate for a short time under the original names of the companies. When negotiations first began, I believe it was the thought to purchase the assets and properties rather than the capital stock."

The appellee contends that a purchase of all the capital stock is tantamount to a purchase of the properties and assets. If we could approve that contention, the error would be harmless, but we do not so understand the law. A transfer of stock of a corporation or a transfer of certificates of stock which only evidence the stock, is held not to be a transfer of the property and assets of the corporation itself. The owner of a share of stock in a corporation owns no part of the capital, and is not the owner nor entitled to the possession of any definite portion of its property or assets. Hence the purchaser of stock in a corporation does not purchase any portion of the corporation's assets, nor is a sale of all the stock of a corporation a sale of the physical properties of the corporation. Presnall v. Stock Yards National Bank (Tex. Civ. App.) 151 S. W. 873; Continental Trust Co. v. Brown (Tex. Civ. App.) 179 S. W. 939; Automobile Mortgage Company v. Ayub (Tex. Com. App.) 266 S. W. 134; 5 Fletcher on Corporations, § 3433; Pacific Fire Ins. Co. v. John E. Morris Co. (Tex. Civ. App.) 1 S.W. (2d) 348; Moroney v. Moroney (Tex. Com. App.) 286 S. W. 167.

In 14 C. J. 54, § 7, we find this language: "It is also well settled and an important rule that the real or personal property and choses in action conveyed to or acquired by a corporation are in law the property of the corporation as a distinct legal entity in the same sense as a natural person owns property and not in any sense the property of its members or stockholders and the members or stockholders as such and distinguished from the corporation cannot either separately or joint-

ly in their own names convey, assign or mortgage the corporate property or otherwise dispose of it."

In 14 C. J. p. 386, it is said: "It has been said that where the entire capital stock of the corporation is sold and transferred, all the physical property of the corporation is thereby conveyed to the purchaser, but, of course, this is not strictly true for the stock which belongs to the stockholders is to be distinguished from the property of the corporation which belongs to it. The purchasers of the stock therefore acquire no title to the property of the corporations, but simply acquire the beneficial interest therein as stockholders."

The general rule with reference to earning a commission in brokerage actions is stated in 7 Tex. Jur. 443, § 54, as follows: "It is a prerequisite of a right to commission that the broker shall have succeeded in effecting either the transaction called for by his contract of employment or some other transaction accepted by his employer."

The contract declared upon by Schneider was made with A. McClory. As originally instituted, the suit was against McClory and other stockholders of the refining and pipe line companies and the contract declared upon is that his services as a broker were engaged by McClory to find a purchaser for the properties and assets of the refining and pipe line companies who would be ready, able, and willing to purchase the assets of said companies at such price and upon such terms and conditions as might be acceptable to appellant. The facts are as shown by the record that Wilcox Company never purchased the property and assets of the refining and pipe line companies. What the Wilcox Company did purchase was the stock of these two companies and it further appears that the stock was purchased, not from McClory, but from the individual stockholders in the refining and pipe line companies. The appellee, Schneider, dismissed his action as to all of the defendants except McClory, and further took a nonsuit as to that part of his petition wherein he claimed compensation for the sale of the Grayco stock upon a quantum meruit. In other words, the case as finally submitted to the jury is against McClory alone based upon an express contract to pay him for procuring a purchaser of the property and assets of the refining and pipe line companies. That he has never complied with that contract must be admitted. He does not seek to recover upon a quantum meruit against McClory for the sale of the stock, even if under the facts he would be entitled to do so, a question which is not before us and which we do not decide.

■■ Appellee further contends that, because a purchase of all the stock is practically a purchase of the property and assets, he has substantially performed his contract with McClory. The contract declared upon is an entirety. In order to be entitled to compensation, he must procure a purchaser, ready, willing, and able to take the property and assets of McClory's corporations upon terms acceptable to McClory. Entire contracts are not within the spirit of the rule which entitles a person whose personal services have been engaged to recover upon the ground of substantial performance.

■ That a party suing upon an express contract for personal services cannot recover upon proof of services rendered to other parties and not according to the contract, or upon a quantum meruit without appropriate pleadings, are propositions too sound to require the citation of authorities. Schneider contracted to find a purchaser for the properties and assets of the corporation only. Under proper pleadings praying for a recovery against McClory upon a quantum meruit, he might possibly have been entitled to a judgment for reasonable compensation for procuring a purchaser of McClory's stock, but that is not the case before us. It is conceded that the sale actually consummated was the stock and not the assets. Schneider pleads as a fact that the stock was purchased by the Wilcox Company from the stockholders individually, and the written contract and transfer of the stock show this to be true. A purchaser of the stock of a corporation from the individuals holding shares is not the same thing as purchasing the assets and property of the corporation from the company itself. There is a difference, both in law and fact, especially when results are considered. A broker who had agreed with A to find a purchaser for horses could not recover against him for services rendered in finding a purchaser for cows, especially if they were B's cows and they were purchased directly from B, and a fortiori if A had no authority to list B's horses with him for sale.

■ Moreover, plaintiff did not sue to recover the usual and customary commissions. His suit was for reasonable compensation. Reasonable compensation due a broker is not always nor necessarily the usual and customary compensation, and vice versa. Reasonableness depends upon the services actually performed under all the circumstances. Usual and customary compensation depends upon the proof of the existence of a custom or usage known to the parties.

■ Under the general rule the president of a corporation has no power by virtue of his office to dispose of the company's real estate (10 Tex. Jur. 978), and, under the further rule that his authority to enter into such a

contract of sale must be specially alleged (10 Tex. Jur. 995), we strongly incline to the opinion that the plaintiff's petition was subject to a general demurrer.

By numerous propositions the appellant assails the issues submitted to the jury upon various grounds and insists that the verdict and judgment are not supported by the pleadings or the evidence.

 Special issue No. 1 inquires whether Schneider was representing the Wilcox Company in negotiations with McClory regarding the sale of the refinery and pipe line in question. The jury answered this in the negative, and there is evidence to support the finding, but the issue itself is immaterial, because the refinery and pipe line were not sold, and it does not appear that McClory had any authority from the corporations to contract with a broker for the sale of the property thereof. By special issue No. 2 the inquiry is whether the purchase by the Wilcox Company of the capital stock of the refining and pipe line companies resulted solely from acts and efforts of Schneider. This is an immaterial issue because Schneider was not employed by McClory or any one else to sell the capital stock of said companies and he does not sue the owners of the capital stock nor seek to recover against them or any one else upon a quantum meruit based upon such sale. This is also true with reference to special issue No. 3 and the jury's answer thereto. By special issue No. 4 the jury is asked whether between certain dates McClory employed Schneider to procure a purchaser for the refinery and pipe line. There is evidence to sustain the affirmative finding of the jury, but as stated, the refinery and pipe line were not sold, nor was it shown that McClory was authorized to employ a broker to sell such property. This is also true with reference to special issue No. 5. By special issue No. 6 the jury is asked if Schneider was the procuring cause of the sale by the stockholders of the two companies of the corporate stock to Wilcox Company. The jury answered "Yes," but there is no evidence to sustain the finding, and it is foreign to the contract sued upon. He did not sue the stockholders nor seek to recover upon a quantum meruit for the sale of their stock to the Wilcox Company. The judgment therefore is not supported by either the pleadings or the evidence.

Under this view of the record it is unnecessary for us to discuss the numerous other propositions relating to the refusal of requested charges and the admission and exclusion of proffered testimony.

For the reasons stated, the judgment is reversed, and the cause remanded.