## WEINREB v. STRAUSS.
### No. 1013.

Municipal Court of Appeals for the District of Columbia.

Argued March 6, 1951.

Decided April 5, 1951.

Joseph J. Lyman, Washington, D. C., for appellant.

Joseph A. Kaufmann, Washington, D. C., John M. Doukas, Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiff sued two defendants for $3,000 "for services rendered * * * in obtaining a suitable site for their place of business." A verdict was directed for one defendant and he is not concerned in this appeal. As to the other defendant, plaintiff's evidence tended to show that said defendant was interested in purchasing a retail liquor business, that he was shown several such businesses by plaintiff but none was found suitable to his needs, that de-

fendant urged plaintiff to continue to look for a suitable place, saying: "All you have got to do is to get me a place, and I will pay you"; that thereafter plaintiff learned of a business for sale and informed defendant of it on defendant's assurance that "I promise you if I buy it you will get yours"; and that defendant negotiated for and purchased the business. Defendant denied he ever agreed to pay plaintiff anything and offered evidence that the business which he bought was not brought to his attention by plaintiff.

The trial court denied defendant's motion for a directed verdict and submitted the case to the jury which returned a verdict for plaintiff for $1,000. Defendant filed a motion for judgment notwithstanding the verdict and in the alternative for a new trial.[1] The court granted the motion for judgment and also in the alternative the motion for new trial.[2] This appeal is from the order setting aside the verdict in plaintiff's favor and granting judgment for defendant.

The trial court granted the motion for the reason that "the plaintiff as a matter of law failed to make out a case in damages against the defendant on which the jury could legally return a verdict in the amount of $1,000.00." As stated before, the complaint sought damages of $3,000 for services rendered. At the conclusion of the evidence counsel for plaintiff stated: "We are not going on a commission. The theory of our case is this, Strauss told him, * * * go ahead and work—if you are instrumental in closing a deal I will see you are taken care of." It is thus evident that plaintiff was suing for the reasonable value of his services, no claim being made that defendant agreed to pay any specific sum.

Strangely enough, neither plaintiff nor his two expert witnesses testified as to the reasonable value of plaintiff's services. There was considerable testimony as to the usual commission paid to a business-chance broker when employed by seller, it being agreed by all that in the great majority of cases the broker is paid by the seller and not by the buyer.[3] There was also testimony that in some instances the broker, by special agreement, is paid partly by the seller and partly by the buyer. Obviously none of this testimony tended to prove the value of plaintiff's services in this case.

One expert witness testified that when the broker represents the buyer the broker usually charges the buyer 10% of the purchase price and generally the parties have an agreement to that effect. The same witness, when asked what is the reasonable value of his services when employed by a buyer and what factors go into determining such value, replied: "We generally say that the existing ten per cent on the sale of that particular business will suffice." And when asked what is the usual unit of measure to determine the fee charged by him, when there is no specific agreement, replied: "That would be the sale price of the business—ten per cent of the sale price of the business."[4]

 It is the general rule, in the absence of an express agreement as to compensation, that one who employs a broker impliedly agrees to pay him the usual and customary commission.[5] And it is also the rule that in an action for reasonable value of services evidence may be received as to the prices usually charged and received for similar services by other persons in the same business or profession.[6] These rules,

---

1. Municipal Court Rule 46, based on Fed. Rules Civ.Proc. rule 50, 28 U.S.C.A.

2. The trial court properly considered and ruled on both motions. Crusade v. Capital Transit Co., D.C.Mun.App., 63 A.2d 878, 8 A.L.R.2d 229.

3. Apparently plaintiff was not a business-chance broker but merely a salesman, but no point was made of this at trial or here. See Code 1940, § 45-1408(c).

4. Whether the witness meant ten per cent of the gross sale price is not clear. This witness and the other expert indicated that often the broker's commission is based on the gross price less the amount paid for the stock of goods. In this case $22,000 was paid for the license, good will and leasehold, and $32,000 for the stock of goods.

5. McManus v. Newcomb, D.C.Mun.App., 61 A.2d 36.

6. Stanton v. Embry, 93 U.S. 548, 23 L.Ed. 983; Ferry v. Henderson, 32 App.D.C. 41.

however, assume the existence of a usual commission or charge well established by custom and usage. The testimony stated above did not establish the existence of a customary charge by a business-chance broker to a buyer. The witness admitted that it was customary for the seller to pay the broker's charges and that it is only in rare instances that the buyer pays. The witness did not testify that he was acquainted with charges made by other brokers in those rare instances, and it is evident that he testified only to such charges made by him in his own experience. He testified that in the year 1950 he had been paid by purchasers in only two instances. The testimony of the witness did not establish a customary charge which the jury could use as the basis for determining the reasonable value of the services. This is especially true in the absence of any testimony as to the value of plaintiff's services. Since plaintiff did not claim to be entitled to a commission, the customary charge would be but one factor to be considered in evaluating the services.[7] And this is not the type of case where a jury may reach a valuation on their own general knowledge of the subject. Plaintiff relies heavily on Watson v. Durepo, R.I., 71 A.2d 103, but in that case the opinion expressly states that a qualified witness testified as to the value of the services in question. Plaintiff also contends there was a stipulation or agreement between counsel that the amount of compensation was to be left to the jury's discretion in the light of the evidence. We do not so read the record.

Our conclusion is that the trial court was correct in holding that here there was no evidence justifying a verdict of $1,000. But it does not necessarily follow that the court was correct in entering judgment against the plaintiff. Plaintiff's evidence if accepted by the jury, as evidently it was, established that he had performed services for defendant at his request and on his promise to pay for them. Therefore even in the absence of testimony as to the reasonable value of the services, plaintiff was entitled to a verdict in at least a nominal amount.[8] It would have been error to direct a verdict for defendant and therefore it was improper to set aside the verdict and order judgment for him.[9] The test to be applied to a motion for judgment n.o.v. is the same as that to a motion for a directed verdict.[10] Defendant cites Bedrosian v. Peoples Mortgage Corporation, D.C. Cir., 182 F.2d 395, as authority for directing a verdict in the absence of proof of damage. Here, however, there was proof of damage; the failure of proof went to the amount. Where a plaintiff is entitled to a verdict in some amount but the amount awarded is not justified by the evidence, the proper procedure is to set aside the verdict as contrary to the evidence and award a new trial. This is what the court did in its alternative order.

Judgment reversed and case remanded for a new trial in accordance with the order of the trial court.

7. McClory v. Schneider, Tex.Civ.App., 51 S.W.2d 738; Canadian Industrial Alcohol Co. v. Nelson, 8 W.W.Harr, Del., 26, 188 A. 39.

8. Sedgwick, Damages (9th ed.), Vol. 1, § 106.

9. Clemmer v. Merriken, 144 Md. 675, 125 A. 394, 34 A.L.R. 928.

10. McSweeney v. Wilson, D.C.Mun.App., 48 A.2d 469.