**Edward S. COWAL, Appellant,**

v.

**Mary Jane HOPKINS. Appellee.**

**No. 4020.**

District of Columbia Court of Appeals.

Argued March 13, 1967.

Decided May 10, 1967.

Samuel F. Ianni, Washington, D.C., for appellant.

John F. Crawford, Washington, D.C., for appellee. Marguerite P. Schimpff, Washington, D.C., also entered an appearance for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

MYERS, Associate Judge:

Appellant is a real estate and business chance broker licensed to do business in Maryland and the District of Columbia. Appellee was the owner of a gift shop located in Maryland which she desired to sell quickly as she planned to join her husband abroad. She gave to appellant "exclusive rights for 3 months from 2/29/64" to sell the gift shop, which would be "on 'open listing' thereafter until notified in writing." The selling price was stated to be $10,000, and the commission to be paid the broker was specified to be "10% of total sales price if sale is made to any client referred" by appellant.

On May 11, 1964, appellee entered into an agreement to sell the store to one Robert Hachten for the sum of $9,000, contingent upon his obtaining a new lease with the landlord and the necessary occupancy permit. At trial Mr. Hachten testified that he

ultimately waived these conditions about June 1, 1964, at the urging of appellee who was anxious to dispose of the property as she was about to leave the country. He also testified that between May 11, when he entered into the agreement, and June 1, when he took over operation of the shop, changes were made in their original contract. The agreement provided that settlement and transfer of the business was to be June 1, 1964. Formal transfer of the business to Mr. Hachten is evidenced by a bill of sale executed on that date. Appellant makes no contention that he produced the ultimate buyer or in any way contributed to the consummation of the sale of the gift shop.

The broker demanded a commission arising from the sale, and when appellee refused to pay, he filed suit seeking a commission of $900. Following trial without a jury, judgment was rendered in favor of appellee.

Appellant contends that the words "exclusive rights" in the listing agreement precluded appellee during the three-month "exclusive" period from disposing of her business, even through her own efforts, without being liable to pay him a commission. The owner takes the opposite view, maintaining that by the very terms of their agreement it is clear that the parties contemplated that a commission would be paid appellant only "if sale is made to any client referred" by appellant and that, in any event, the sale was not effective until June 1, 1964, after any rights given under the listing agreement had expired.

A broker claiming a commission must prove that he has procured a purchaser ready, willing and able to buy on the seller's terms. A commission is not earned when a sale is not consummated, unless such failure can be attributed to some fault or misconduct of the seller. Pastor v. Williams, D.C.Mun.App., 135 A.2d 460, 461 (1957). This rule of law has been frequently announced, with some slight variations in phraseology, in nearly every state in this country, including Maryland. Arthur H. Richland Co. v. Morse, 169 F.Supp. 544, 549 (D.Md.1959); Fernando R. Sari, Inc. v. West, 160 F.Supp. 390 (D. Md.1958); Maryland Code 1957, Art. 2, § 17. See also Tahir Erk v. Glenn L. Martin Co., 143 F.2d 232, 235 (4th Cir. 1944). It is equally well settled that, in the absence of an agreement to the contrary, a broker is not entitled to a commission on a sale made by the owner unaided by the broker. Shea v. Second Nat. Bank, 76 U.S.App.D.C. 406, 410, 133 F.2d 17, 21 (1942); Cf. Stoever-Hawley Co. v. Trappey, D.C.App., 203 A.2d 925 (1964).

In order for a broker to collect a commission made on a direct sale by the owner to a buyer not procured by the broker, there must be substantial evidence that the owner surrendered, under the terms of their agreement, any right to make a sale without liability to pay the broker a commission. Murray v. Towers, 99 U.S.App. D.C. 293, 239 F.2d 914 (1956). A mere scintilla of evidence on this point is not enough. In our judgment the evidence in the present case does not support the interpretation of the contract as contended for by the broker. If it had been the mutual intent of both the owner and the broker that the former was to have no right to personally sell her business during the three-month period, this could easily have been inserted as a condition of the agency. It is generally the law that any ambiguity in a contract must be construed against the party who drafted it——in this case the broker. Distillers Distributing Corp. v. J. C. Millett Co., 310 F.2d 162, 164 (9th Cir. 1962); Messina v. Mutual Benefit Health & Acc. Ass'n, 228 F.Supp. 865, 868 (D.D.C. 1964); McIntosh v. Group Health Ass'n, D.C.Mun.App., 138 A.2d 496 (1958). If no ambiguity exists, construction of the contract is a matter of law for the court. Rich v. Sills, D.C.Mun.App., 130 A.2d 920 (1957). In our opinion the parties clearly contemplated that appellant was to receive a commission only if a sale were made to any client referred by him. We are thus

in accord with the conclusion of the trial judge that the parties did not intend—and appellant has not established otherwise—that the owner was to surrender her right to independently dispose of her property during the period here in question and that the "exclusive rights" granted appellant did not preclude her from doing so.

Affirmed.