**John A. KENDRICK, Appellant,**

v.

**Eunice V. R. KENNEDY, Appellee.**

**No. 81-262.**

District of Columbia Court of Appeals.

Argued Nov. 25, 1981.

Decided April 15, 1982.

Edward T. Minor, Washington, D. C., for appellant.

Ross O'Donoghue, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KELLY and NEBEKER, Associate Judges.

PER CURIAM:

We are called on in this appeal to determine whether a real estate broker was entitled to a commission. Concluding that she was, we affirm.

Appellee was formerly the agent for the leasing of appellant's property at 1233 30th Street, N.W. In 1971, appellee arranged for the lease of the ground and first floors of the building to tenants Michael Gambaro and Constance McGoodwin, respectively. Georgetown Properties, through appellee,[1] managed the building, collected rents, arranged for repairs, paid expenses and taxes and remitted the net rents to appellant. In 1973, appellee left Georgetown Properties and opened her own real estate business. It was agreed that she would retain appellant as a client and continue to manage his property.

When appellee opened her new business, a new lease was signed by appellant and Mr. Gambaro. This lease, dated October 6, 1973, contained the following provision:

> [S]aid lessor hereby appoints Eunice V.R. Kennedy Real Estate as exclusive agent for the duration of this lease and agrees to pay to Eunice V.R. Kennedy Real Estate a rental commission of one-half month's rent for each year of tenancy and a 7½% management fee on all rents collectable under this lease or any extension or renewal thereof, and should said premises be sold or offered for sale during the terms of this lease or any extension thereof, or within sixty days thereafter, Eunice V.R. Kennedy Real Estate will be the exclusive agent for said sale and lessor will pay the usual sales commission. It is further agreed that should lessor elect to sell his property during the terms of this lease, lessee agrees that he will allow the property to be shown upon advance[2] notice from Eunice V.R. Kennedy Real Estate.

Throughout her management of appellant's building, appellee often advanced her own funds for repairs and other expenses, relying on future rents for reimbursement. The record indicates that appellant was quite satisfied with appellee's work and that the relationship between the two parties was amiable.

---

1. Appellee was a co-owner of Georgetown Properties, Inc.

2. There is no indication that there was any undue pressure or inequality of bargaining power in the signing of the lease.

Mr. Gambaro telephoned appellant on May 5, 1975, and indicated that he was interested in purchasing the building. Numerous communications between appellant and Mr. Gambaro took place from May 5, 1975 to June 22, 1976, the date of settlement. During this time period, appellant directed appellee to arrange various renovations of the building. Appellant did not, however, inform appellee of the potential buyer or the negotiations. In fact, appellee did not learn of the sale until June 24, 1976, two days after settlement. After learning of the sale and pursuant to the lease, appellee requested $5,850, a 6% commission on the $97,500 sale. According to appellee, appellant agreed to pay this amount after he received the proceeds from the sale. Appellant, however, never submitted the payment.

On August 5, 1976, appellant sued appellee for an accounting and appellee counterclaimed for the commission on the sale. After discovery, each side moved for summary judgment. Appellant's motion was denied. On January 26, 1978, appellee was granted partial summary judgment for the full amount of the commission. This order was amended on August 31, 1978, providing that appellee was entitled to judgment as a matter of law if she prevailed at trial on the issue of whether the status of her real estate broker's license precluded her from asserting the counterclaim. Upon satisfactory resolution of this issue, judgment was entered for appellee.[3]

Appellant contends that appellee has no right to the commission because she took no part in bringing about the sale. In *Cowal v. Hopkins*, D.C.App., 229 A.2d 452 (1967), the court stated that "[i]n order for a bro-

ker to collect a commission made on a direct sale by the owner to a buyer not procured by the broker, there must be substantial evidence that the owner surrendered, under the terms of their agreement, any right to make a sale without liability to pay the broker a commission." *Id.* at 454. In the present case, the lease clearly indicates that the owner surrendered any such right. Furthermore, in *Cowal*, the agreement stated that the broker would receive a 10% commission *if the sale was made to any client referred by the broker.* The agreement in the present case contained no such clause. Rather, it specifically provided that appellee was to be the exclusive agent for any sale made during the term of the lease or within sixty days thereafter.

In *Cowal*, the court held that *"in the absence of an agreement to the contrary,* a broker is not entitled to a commission on a sale made by the owner unaided by the broker." *Id.* (citing *Shea v. Second National Bank*, 76 U.S.App.D.C. 406, 410, 133 F.2d 17, 21 (1942) (emphasis added). Here there was a contrary agreement and appellant is bound by the terms of that contract.

In *Bourgoin v. Fortier*, 310 A.2d 618 (Me. 1973), the court stated:

[A]n exclusive right to sell . . . should be created only by clear and unambiguous language. The owner of property—frequently unfamiliar with the terminology of brokerage transactions—should not be held to give up the right to sell his own property unless this right is expressly negatived by the contract. . . . One seeking to create an exclusive right to sell . . . must do so in an express and unambiguous manner within the four corners of the contract. Only in this way

---

**3.** Appellant claimed that appellee was prohibited from suing for the commission by D.C.Code 1981, § 45–1907(h) because she was not duly licensed as a real estate broker at the time the sale was completed. It is apparent, however, that appellee's license was not renewed due to an error by the District of Columbia Real Estate Commission.

Real estate brokers are required to renew their licenses by March 1 each year. Appellee stated that she mailed her renewal application and fee on February 2, 1976. When she had

not received her license by February 27, she phoned the licensing office and was informed that they could not check on her application due to their heavy backlog. Appellee called again on March 15, April 16, and June 15 and was told that the office was re-organizing. The license was finally issued after she hand-delivered another application and check to the Real Estate Commission on August 20, 1976. *See generally Riddell v. Howar*, D.C.Mun.App., 90 A.2d 925 (1952).

can the often unwary and unsophisticated property owner be divested of his inherent right to sell land which he still owns. [*Id.* at 620.]

The contract signed by the parties in the present case is not ambiguous. There is nothing to indicate that appellant is an "unwary and unsophisticated property owner." If appellant found the language of the contract to be ambiguous, he should not have signed it in that form.

The language of the lease is clear. It provides that if the property is sold, appellee will be the *exclusive agent* for the sale and will receive the usual sales commission. There is authority for the proposition that if there is an exclusive agency, the broker is entitled to his commission irrespective of who causes the sale. *See Stevenson v. Nichols*, 362 Pa. 25, 28, 66 A.2d 235, 236 (1949) (citations omitted). Furthermore, "[a]n owner may not, while negotiations are pending, ignore the broker and complete the sale, and thereafter refuse to pay the broker his commission." *Id.* at 28, 66 A.2d at 236 (citations omitted). This appears to be exactly what happened in this case. Appellant carried on negotiations with the buyer for over a year without informing appellee of the prospective sale. This is clearly in violation of the agreement that appellee would be the exclusive agent for the sale of the premises.

*Affirmed.*