**JOSEPH M. SILVERMAN, INC., Appellant,**

v.

**Glenn HARRISON, d/b/a Harrison Realty, Appellee.**

**No. 84–43.**

District of Columbia Court of Appeals.

Argued July 10, 1985.

Decided Aug. 29, 1985.

Kenneth Loewinger, Washington, D.C., for appellant.

George T. Volsky, Washington, D.C., for appellee.

Before MACK, FERREN, and ROGERS, Associate Judges.

ROGERS, Associate Judge.

Appellant raises four claims of error in appealing from a judgment in which a jury awarded appellee $16,400 as the "customary real estate commission" to which he was entitled under a contract with appellant. Appellant contends (1) the trial court erred in finding that appellee was the exclusive agent to sell appellant's Clifton Street property; (2) appellee lacked standing to sue because his cause of action did not accrue until after his license as a real estate broker in the District of Columbia had expired; (3) the verdict is excessive, unsupported by the evidence and arbitrary; and, (4) even if the trial court correctly found appellee had an exclusive listing, it erred in instructing the jury regarding the measure of damages. Finding none of these contentions persuasive, we affirm.

## I

The undisputed facts show appellant and appellee entered into a contract on April 24, 1974 for appellee to serve as appellant's agent to manage and sell appellant's property located at 1225 Clifton Street, Northwest. The contract provided that the "Agent will be considered the exclusive real estate broker in connection with the renting, leasing, or sale of the managed property and entitled to receive the customary real estate commissions in connection with such service." Pursuant to the contract, appellee managed the Clifton Street apartment building from May 1, 1974 until it was sold in September 1979.

Early in 1979, appellant began discussions with another broker, Vogel & Hoffman, Incorporated regarding the sale of the Clifton Street property. On May 2, 1979, appellant accepted an offer to purchase the Clifton Street property through Vogel and Hoffman. The sales contract provided that if the seller was to take back financing, the contract was subject to approval by the seller of a satisfactory credit report within ten business days after the seller had received the report. Settlement occurred on September 28, 1979, and appellant paid Vogel and Hoffman a $10,000 brokerage commission. Appellee was a licensed real estate broker in the District of Columbia at the time he entered into the contract with appellant in 1974 and at the time appellant accepted an offer from another real estate broker in 1979.

## II

[1] Appellant appeals from the denial of a motion for judgment notwithstanding the verdict, or in the alternative for a new trial or remittitur. On appeal we apply the same standard as the trial court in considering whether a jury could reasonably reach a verdict in favor of appellee, the opponent of the motion. *Vassiliades v. Garfinckel's*, 492 A.2d 580, 586 (D.C.1985) (citations omitted).

### A.

*Kendrick v. Kennedy*, 444 A.2d 960, 962 (D.C.1982), is dispositive of appellant's claim that appellee did not have an exclusive listing. Under the plain language of the April 24, 1974, contract, appellant surrendered any right to sell the Clifton Street property without liability to pay a commission to appellee. *Id.* at 961–62; *compare Riddell v. Howar*, 90 A.2d

925, 926 (D.C.1952) (rights of parties depend on agreement between them). Appellant does not allege fraud or mistake, but only that he was unaware of the contract clause because the parties never discussed it. Appellant is not an "'unwary and unsophisticated property owner,'" *Kendrick v. Kennedy, supra,* 444 A.2d at 962 (citation omitted); he is an experienced businessman and a sophisticated property owner, who owns or has owned several commercial properties in the District of Columbia, Virginia and Maryland. It was incumbent upon him to read the contract, and if he believed the language of the contract to be ambiguous, he should have requested clarification or modification of the language, *see id.,* and failing that, pursuant to the contract, he could have terminated it by giving appellee sixty days notice.

### B.

We further hold that appellee had standing to bring his lawsuit for breach of his contractual right to an exclusive listing. Appellant contends that D.C.Code § 45–1907(h) (1981)[1] precludes appellee from suing for a commission because appellee was not a duly licensed broker or agent at the time the sale of the Clifton Street property was consummated. He contends the operative facts giving rise to appellee's cause of action did not appear until the property was transferred and a commission was paid for the sale of the property, or, alternatively, until the expiration of the ten-day credit check period.

A broker claiming a commission must prove that he has procured a ready, willing, and able buyer to buy on the seller's terms subject to the condition subsequent that the sale go through unless the reason the sale fails to go through is attributable to some fault of the seller. *Cowal v. Hopkins,* 229 A.2d 452, 454 (D.C.1967) (citations omitted). We need not decide when the right to a commission actually earned would normally accrue since appellee's cause of action, under this 1974 contract with appellant, accrued when appellant breached the contract by accepting the offer to purchase the Clifton Street property through another real estate broker. *See McManus v. Newcomb,* 61 A.2d 36, 38 (D.C. 1948) (breach occurred when property placed for sale with other agents); *Lakeview Investments, Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096, 1099 (1974) (breach of duty to pay commission gives rise to cause of action); 1 Am.Jur.2d *Actions* § 89 (1962), at 618 (cause of action in contract accrues at time of breach or failure to do thing agreed to); *see also Fowler v. A & A Company,* 262 A.2d 344, 348 (D.C.1970) (when contract repudiated, party may sue for damages); *Jones v. Pledger,* 124 U.S.App.D.C. 254, 256, 363 F.2d 986, 988 (1966); *Livingston v. Sims,* 197 S.C. 458, 462, 15 S.E.2d 770, 772 (1941).[2] The parties to the 1979 sales con-

---

1. D.C.Code § 45–1907(h)(1981) (repealed 1983) provides:

   No person, firm, partnership, copartnership, association, or corporation engaged in the business or acting in the capacity of a real-estate broker or a real-estate salesman, or a business-chance broker or a business-chance salesman within the District of Columbia shall bring or maintain any action in the courts of the District of Columbia for the collection of compensation for any services performed as a real-estate broker or a real-estate salesman or a business-chance broker, or a business-chance salesman, or for enforcement of any contract relating to real estate, without alleging and proving that such person, firm, partnership, copartnership, association, or corporation was a duly licensed real-estate broker or real-estate salesman, or business-chance broker or business-chance salesman, at the time the alleged cause of action arose. (*Recodified in modified form* at D.C.Code § 45–1926(c) (Supp.1984).

2. The trial court instructed the jury that it had to find that the plaintiff had proved by a preponderance of the evidence, *inter alia,* that a breach occurred either when the sale occurred or when appellant contracted to sell the property through another broker. Although it was for the jury to determine as a fact what the 1974 and 1979 agreements were and what the parties intended by their agreements, *Riddell v. Howar, supra,* 90 A.2d at 927, the question of when the breach occurred was, in the absence of disputed facts, a question of law for the court. *Howard University v. Best,* 484 A.2d 958, 967 (D.C.1984);

tract had reached agreement on all material terms and intended to be bound. *Compare Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 547 (D.C.1981). The credit check condition, and other conditions in the sales contract[3] made the parties' performance under the sales contract subject to a specific event but did not extinguish the sales contract. *Cambria Savings & Loan v. Estate of Gross*, 294 Pa.Super. 351, 357–58, 439 A.2d 1236, 1239–40 (1982) (citing RESTATEMENT (SECOND) OF CONTRACTS, §§ 224, 230 (1981). Since the events referred to in the conditions never happened, appellant's breach of duty under the contract with appellee to use him as the exclusive agent for sale of the property was never cured.

### C.

We find no error by the trial court in refusing to set aside the jury verdict on the grounds it was excessive, unsupported by the evidence and arbitrary. Appellant relies on evidence that appellee testified that he had never sold commercial property in the District of Columbia and had never collected a ten percent commission, and that appellee's witness (Curran) was not a real estate broker, but only a real estate agent, and had never participated in a commercial transaction in the District of Columbia that had earned a ten percent commission. Appellant also contends that the only witness (Hoffman) who was a real estate broker licensed in the District of Columbia with substantial relevant selling experience, testified that ten percent is not a customary rate, but three to six percent is, and that the broker, as the selling broker of the Clifton Street property, had received a $10,000 commission, which was approximately five percent.

In reviewing a jury verdict the appellate court will order a new trial only when the award is contrary to all reason. *Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 113–14, 409 F.2d 145, 148–49, *cert denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); *Vassiliades v. Garfinckel's, supra*, 492 A.2d at 594; *Romer v. District of Columbia, supra*, 449 A.2d at 1099 and cases cited therein. Upon review of the record we conclude that there was evidence before the jury which provided a reasonable basis for the damages awarded to appellee under the parties' contract.

Appellee testified that he had ten years experience as a real estate broker in the District of Columbia and was familiar with the customary ten percent rate for the area for the brokerage and sale of apartment buildings like the Clifton Street property. He explained he took a lower commission, five percent, rather than the customary seven percent commission for managing certain of appellant's properties, including the Clifton Street property, because appellant "kept after me to do it with the promise that I would eventually sell the properties when he decided to unload them." Although admitting that he had personally never sold commercial property in the District of Columbia or collected a ten percent commission, he claimed that he had dealt with many brokers who did business in the District of Columbia. Appellee also offered the testimony of a real estate agent[4] that the commission for selling commercial property in the District of Columbia varies from six to eight percent since the customary rate is a "function of many things,"

*see Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C.1985) (citing *United States v. McShain, Inc.*, 103 U.S.App.D.C. 328, 330–31, 258 F.2d 422, 424–25, *cert. denied*, 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70 (1958). The error was harmless.

3. At oral argument appellant claimed that he was also relying on the contingencies in the sales contract for the benefit of the purchaser regarding inspection and termites.

4. Appellee's witness (Curran) testified that, as a real estate agent for ten years, he normally negotiated the commission to be paid as brokerage fees and was familiar with commission paid to agents and brokers in the Washington Metropolitan area.

including business expenses and the "size of the deal," and that the commissions for commercial properties are "very much" negotiable. Both parties called Richard Hoffman, a real estate broker, who testified that although the customary commission for commercial property in the District of Columbia was three to six percent, the commissions are "very much" a matter of negotiation and he was working on two deals which called for ten percent commissions. He testified that his own deal with appellant called for a six percent commission but was negotiated downward to four percent.

The jury found that the amount of appellee's damage was between the percentages given by the parties' witnesses for the customary real estate commission. It could reasonably do so in light of the evidence from both parties' witnesses that the customary commission was not a fixed figure but depended on a number of variables and was most often a matter of negotiation between the parties. The evidence that appellee's regular commission on residential, non-income producing property was six percent and that he had previously accepted a five percent commission for another commercial property purchased by appellant, is not inconsistent with the jury verdict. Appellee testified that the five percent commission which he had received from appellant represented one-half of a commission and that his acceptance of a two percent reduction in his management fee for the Clifton Street property was based on appellant's agreement that he would be the exclusive broker at the time of its sale. The jury could reasonably have found that appellee's negotiations with appellant regarding the Clifton Street property were based on their agreement that appellee also would receive a higher fee than six percent. Accordingly, the fact that appellant offered evidence suggesting that a lower percentage is the customary commission does not mean that the jury was without sufficient evidence on which to base its verdict, as in *Weinreb v. Strauss*, 80 A.2d 47, 49 (D.C.1951), or that the verdict was contrary to all reason or resulted from prejudice, passion or partiality or was based on oversight, mistake, or consideration of an improper element. *Romer v. District of Columbia, supra,* 449 A.2d at 1099; *Lester v. Dunn*, 154 U.S.App.D.C. 399, 402, 475 F.2d 983, 986 (1973).

### D.

Finally, we find no merit to appellant's claim that the trial court erred when it failed to instruct the jury that the measure of appellee's damages was limited to the amount of the commission actually paid. The 1974 contract called for appellee to be paid the customary real estate commission and the trial court so instructed the jury. The cases cited by appellant do not require that the contract language be set aside to limit a commission to the amount actually paid. Rather, those cases stand for the proposition that absent an express agreement on the commission, there is an implied agreement to pay the usual and customary commission. *E.g., McManus v. Newcomb, supra,* 61 A.2d at 38; *Weinreb v. Strauss, supra,* 80 A.2d at 48; *see also National Savings & Trust Co. v. Kahn,* 112 U.S.App.D.C. 155, 158, 300 F.2d 910, 913 (1962).

Accordingly, the judgment is affirmed.