## WILLIAM F. STEMBLER *v.* FRANKIE WILSON
[No. 84, October Term, 1938.]

*Decided January 11th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*J. Dudley Digges,* with whom were *Lansdale G. Sasscer* and *Marvin J. Anderson* on the brief, for the appellant.

*Louis Strauss,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Frankie Wilson filed suit in the Circuit Court for Anne Arundel County against William F. Stembler to recover

commissions due her as a real estate broker in connection with the sale of Stembler's property located at Linthicum Heights. . The case proceeded to trial on the merits, the jury having found for the plaintiff and assessed damages at $295. The appeal is from the judgment entered on that verdict.

Two exceptions were reserved by appellant to adverse rulings of the trial court. The first relates to its action in overruling his motion to quash the writ of summons which was directed to the sheriff of Prince George's County, and under which the defendant was summoned to appear in Anne Arundel County, while the second was taken to the rulings upon the prayers. These exceptions will be considered in their order.

The suit was filed August 19th, 1937, and summons was issued for the defendant, but was returned *"non est"*. Process was reissued on September 16th, and six days later was by the sheriff of Anne Arundel County returned "tardy", whereupon plaintiff's counsel filed an order to re-issue summons for the defendant to Prince George's County. Upon the last mentioned process, Stembler was duly summoned, and promptly filed the motion to quash upon the ground that he was not then a resident of Anne Arundel County, but resided in Washington, D. C., with an established business in Prince George's County. The facts which were developed at a hearing on the motion are free from dispute, and conclusively show that at the time the suit was filed Stembler, the appellant, was a resident of Anne Arundel County, and continued to live there until September 17th, when he moved to Prince George's County. The statutory provision contained in Code, art. 75, sec. 157, to the effect that "no person shall be sued out of the county in which he resides until the sheriff * * * shall have returned a non est on a summons issued in such county * * *", etc., is here invoked in support of the contention that the process which was issued to Prince George's County should have been quashed, but in our judgment this contention entirely overlooks the words of the statute, under which the right to bring suit

against a person is unlimited so long as the suit is brought in the county of his residence, and in this respect the mandate of the statute was obeyed, because at the time the suit was filed, and for some time thereafter, Stembler was a resident of Anne Arundel County, and, being such when the suit was instituted, was not entitled to have the process quashed upon the ground that later he had removed to another county. This conclusion, which is reached from a consideration of the statute, finds support in authorities dealing with similar statutes. 1 *C. J., Change of Residence*, p. 34; 1 *Am. Jur., Abatement and Revival*, sec. 17. See also, 1 *C. J. S., Abatement and Revival*, sec. 11, par. 3, where it is stated:

"The usual rule mentioned in Sec. 6 above, that defendant cannot effectively create, by his voluntary acts, grounds for abating the suit after its institution, obtains where the matter asserted goes to the venue, so that defendant, by removing to another county or district after the commencement of the action, whether before or after service of the writ of summons, cannot disentitle the court of the county or district wherein suit has properly been instituted to proceed thereafter in the cause."

For the reasons heretofore mentioned, it follows that the action of the trial court in overruling the motion to quash was correct.

A proper consideration of the prayers can best be had by making some reference to the pleadings and evidence. The suit was instituted under chapter 169 of the Acts of 1935 (Speedy Judgment Act for Anne Arundel County). The declaration contained six common counts and one special count, together with a statement of plaintiff's claim for commissions upon the sale of defendant's property at Linthicum Heights to "Mr. and Mrs. Joseph Brokamp" upon the sale price of $6500, at the rate of five per cent on $5000 and three per cent on the balance, amounting to $295, and was sworn to in accordance with the requirements of the Act. After the motion to quash the process was filed by the defendant, the trial court signed an order extending the time for filing pleas until

five days after the ruling on the motion, with the understanding that defendant would be notified of the court's action when such ruling had been made. This however, was overlooked and, no pleas having been filed within the time contemplated by the provisions of the statute, judgment was extended for the amount of the claim, but when the facts last stated were brought to the court's attention, the judgment was stricken out with leave to defendant to plead. In addition to the general issue pleas, the defendant filed a third plea, to the effect that at the time process was issued he was not a resident of Anne Arundel County, nor doing business therein, but was a resident of the District of Columbia, with a regularly established branch of his business at Capitol Heights, Prince George's County. Issues were joined on such pleas, but it should here be stated that the case proceeded to trial on the merits, no testimony having been offered by either side respecting the place of defendant's residence at the time the suit was filed, nor was the matter of his residence referred to in any instruction sought by either of the parties. Under such circumstances, further reference to the plea respecting defendant's residence would have no relevancy to the problems under consideration.

Before the jury was sworn, the plaintiff obtained leave to withdraw the seventh count of her declaration, and the case proceeded to trial upon the six common counts, without any bill of particulars, the statement of account previously referred to having been filed in order to comply with the terms of the Act of Assembly under which the suit was brought, and was no longer in the case when the judgment was stricken out.

During the trial not a single objection was made by either of the parties to any testimony offered by the opposite party, but evidence was offered from which the jury could have found that plaintiff was engaged as a broker in the sale of real estate in October, 1935, at which time defendant went to her home and in her absence listed his property for sale at $8,000; that he later asked her to sell the property for him, but refused to give her

exclusive authority for its sale; that she took a number of prospects to the property, in which he then lived, showing it on eight or ten different occasions prior to August, 1937, when it was sold. Among those whom she interested in the property and sent to see it were Mr. and Mrs. Joseph Brokamp. This was in July, 1937, and the price which she quoted them was $6500. Just when she obtained authority to sell the property at this figure is not shown, her attention not having been directed to that inquiry on direct or cross-examination, but she is corroborated by Joseph Brokamp in her statement that she offered the property to him and his wife at that figure. In view of these considerations the jury could have drawn a logical inference that Stembler, the owner, had, after first listing the property with her at $8000, reduced the selling price to $6500. Brokamp and wife, as a result of Mrs. Wilson's efforts, visited the property and inspected it, and Joseph Brokamp testified that at the outset he informed appellant they were sent by Mrs. Wilson to look at the property. He also stated that she offered it to them for $6500. After inspecting it, they reported to Mrs. Wilson they were considering its purchase and endeavoring to get it financed. The Brokamps and a Mr. and Mrs. Wehe, parents of Mrs. Brokamp, together with their daughter and the daughter's husband, all lived together, and when it was agreed to purchase the property, title thereto was actually taken in the names of the Wehes and Longs, but the four grantees last mentioned knew nothing about the property even being for sale until the Brokamps interested them in it after they (the Brokamps) had first inspected it. On cross-examination, Joseph Brokamp testified: "No sir, I did not buy it, and my wife did not buy it. We just merely went to look at the place and see if it suited us, and then go back and tell the rest of the family what it looked like, and made arrangements with Mr. Stembler to come the following day." There was testimony to the effect that the prevailing rate of commissions for selling residential properties in Baltimore City and vicinity was five per cent. on the

first $5,000 of the sale price and three per cent. upon the excess, while in Anne Arundel County, the prevailing rate was five per cent. on the amount for which properties were sold.

Appellant denied that the Brokamps had at any time told him Mrs. Wilson had sent them to inspect the property, but if the evidence is otherwise sufficient to require its submission to the jury, his testimony in this regard need not be commented upon, except to observe that so far as it was relevant it became a question for the jury's determination. The aforegoing is a summary of all the evidence produced at the trial and as may have already been observed, there is no showing of any contract relating to the rate of commissions Mrs. Wilson was to receive if she sold the property under the listing agreement.

Sufficient has been said concerning the pleadings, the entire absence of any bill of particulars in the case, and the very free manner in which it was tried, to demonstrate, the generalities with which the trial judge was confronted. Since appellant's variance prayer was properly refused because there was no factual basis for its support, it follows that recovery, if any, must be had upon the proof without reference to the pleadings. *Rosenkovitz v. United Rys. & Elec. Co.,* 108 Md. 306, 311, 70 A. 108; *Atlas Realty Co. v. Galt,* 153 Md. 586, 139 A. 285; *Pugaczewska v. Maszko,* 163 Md. 355, 163 A. 205. In this connection, as previously detailed, the jurors could have found, first, that appellee was employed by appellant to secure a purchaser for his property at $6500. They could have also concluded from evidence properly before them that appellee was the only person who caused Brokamp and wife to become interested in purchasing the property, and that the Brokamps in turn, as a result of the interest created by Mrs. Wilson, caused other members of their household to inspect and purchase the same property. Such facts having been found, we are aware of no rule that would have prevented the jurors from logically concluding that Mrs. Wilson was the procuring cause of the sale of the Stembler property.

The contract being silent as to the rate of commissions payable to appellee for procuring a purchaser, she was, under count 2 of the declaration, for "work done", etc. entitled to recover what under all the circumstances her services were worth, that is, the "fair value" of her services. 1 *Poe, Pl. & Pr.* sec. 101, 584B. From the last cited section, we quote: "For mechanical or professional services, the jury, in the absence of express stipulation fixing the rate of compensation, may allow the usual rate of compensation ordinarily paid for such services." See, also, *Calvert v. Coxe,* 1 Gill 95, and *Bregel v. Cooper,* 161 Md. 416, 421, 157 A. 719. It may not be true that the rate of commissions applicable to Baltimore City and vicinity was necessarily determinative of the reasonable commissions which, for procuring purchasers, appellee was entitled to receive, but the jurors were not required to adopt the Baltimore City rate in arriving at their verdict and might, had they seen fit to do so, have accepted the Anne Arundel County rate, which according to the evidence was somewhat higher. In any event, it became their problem to determine what rate of commissions to adopt in order fairly to compensate appellee for the services rendered.

From what has been said, it follows that the trial court would not have been justified in withdrawing the case from the consideration of the jury, and its action in refusing appellant's A prayer, which was a demurrer to the evidence, was free from error.

His second and third prayers asserted that appellee was not entitled to recover, although employed to effect sale of the property, if the jurors found that its sale was effected in consequence of other influences "unmixed with and entirely different from" what was furnished by the introduction of Brokamp and those who actually became its purchasers. Not the slightest suggestion or intimation is contained in the record to warrant the jurors in concluding the property was ultimately purchased as a result of any such outside influences. At most they could only have surmised that some influences existed concerning

which they knew nothing, but which influences neverthe-
less caused the sale of the property. Since the theory of
those instructions was entirely unsupported by any evi-
dence in the case, their granting could only have misled
and confused the jury. They were, therefore, properly
rejected.

Appellant's fourth prayer was also refused. It sought
an instruction that, although the jurors found appellee
was employed by appellant to make sale of the property,
yet if they should believe that prior to commencement of
negotiations the purchasers introduced by the plaintiff
had also employed the plaintiff to procure the property
for them, and that, while plaintiff was in the employ of
appellant, she was also in the employ of and acting as
agent for the purchasers (beyond the power to bind them
to a sale by memorandum), or that appellee was acting
in the interest of the purchasers, she was not entitled to
recover. Much of what was said concerning the correct-
ness of the trial court's action in rejecting his second and
third prayers is applicable to the fourth. There was no
proof in the case, either direct or inferential, to have
enabled a rational finding that appellee was representing
the purchasers of the property, whom, so far as the record
discloses, she had never seen and never had any contact
with, and an inference that she was their agent did not
arise simply because the Brokamps from time to time
within three or four years before the sale of the Stembler
property made inquiry of Mrs. Wilson as to whether she
had any property listed which would suit them.

By appellant's first prayer, which was granted, the
jurors were instructed that "in order for the plaintiff to
recover a commission for the sale of the property men-
tioned in the evidence she must not only show her efforts
or negotiations to accomplish the sale, but she must show
that the sale was the direct result of such efforts or nego-
tiations on her part." That instruction was entirely
harmonious with appellee's third granted instruction.
Those instructions, in our judgment, furnished a proper
guide or standard for the jurors to follow in arriving at

a verdict. Appellee's first granted instruction was to the same effect, except as it related to commissions, concerning which it stated, if the jurors found that appellant agreed, for her services in obtaining a purchaser for the property satisfactory to him, at a price satisfactory to him, to pay appellee as compensation the prevailing customary commissions of five per cent. on the first five thousand of the purchase price and three per cent. upon the excess, their verdict should·be for the plaintiff. Since no special exception was filed to that instruction, we are neither required nor permitted to review the sufficiency of the evidence to sustain it (Code, art. 5, sec. 10), but, apart from this, the prayer was incorrect in substituting "the prevailing customary commissions" as the standard by which appellee's compensation should be determined for the fair value of the services rendered by Mrs. Wilson in procuring purchasers for the property, but inasmuch as it was competent to prove the prevailing or customary commissions for similar services to enable the jurors to determine the fair value of such services *(Calvert v. Coxe, supra)*, there is no reasonable basis to apprehend that appellant was in any way injured by its granting, and we would not for this reason be justifed in disturbing the judgment appealed from.

*Judgment affirmed, with costs.*