Jambs D. Hopkins, J.
The simplicity of the facts in this case disguises the relative difficulty of the law. The proof established at the trial, which was held before the court without a jury, that plaintiff, a licensed real estate broker, was showing homes for sale to a prospective purchaser. Passing the development of houses of the defendant, the purchaser expressed interest in seeing them, and the plaintiff arranged that the prospect visit the development and in fact accompanied him there. Subsequently, the defendant consummated a sale of a house to the plaintiff’s client.
If these facts, which are virtually conceded by the defendant, were the sole controlling circumstances in this case, plaintiff’s recovery might easily be directed. But, in addition, it appears that the defendant had a policy, strictly enforced, that no brokerage commissions were paid on a sale of any of its houses. At the time that the plaintiff, through his wife, a real estate salesman, arranged for the visit by the purchaser to the development, the defendant’s sales manager informed the plaintiff’s wife that it was the policy not to pay any brokerage commission, and the plaintiff’s wife testified that she received that information from the sales manager. However, she also testified that the sales manager told her that he would speak to an officer of the defendant about payment of a commission in the event the client purchased a house. Later, she testified, when the contract was signed, she was told by the sales manager that he had spoken to the officer, and that the plaintiff would obtain a commission. She testified further that she was never informed as to the amount of the commission, and that she did not expect to receive a full commission. Part of the conversations between the sales manager and the plaintiff’s wife is corroborated by the purchaser’s wife. The sales manager denied any conversations with the plaintiff’s wife concerning the payment of a commission, except that he told her no commission would be payable. The officer of the defendant stated, without contradiction, that the sales manager had no authority to make any agreement to pay a commission, and that he had made no such agreement to pay the plaintiff.
Upon weighing the testimony, I find that the sales manager did make the representation to the plaintiff that a commission, but not a full commission, would be paid on the sale of the defendant’s house to the purchaser. It is on the basis of this finding, coupled with the other facts as stated, that several complex questions of law arise.
At the outset, a question of theory is met. The complaint pleads an agreement on the part of the defendant to pay a *100 commission, equal to 5% of the purchase price of the house. No such agreement was established at the trial, nor indeed was it established that the defendant agreed to pay a commission of any specific amount. Under these circumstances, may the plaintiff recover on the basis of quantum meruit f
The beneficent rule is well settled that the value of services may be recovered “when the special promise [is] not established but the evidence in fact showed a rendition of services under circumstances which implied an agreement to pay therefor.” (McKeon v. Van Slyck, 223 N. Y. 392, 399; see, also, Smith v. Kirkpatrick, 305 N. Y. 66, 73; Rodger v. Emigrant Ind. Sav. Bank, 258 App. Div. 614, 615; Sturtevant v. Fiss, Doerr & Carroll Horse Co., 173 App. Div. 113,115; Bialostok v. Wolfer, 191 Misc. 385, 387.) Hence, the plaintiff may be entitled to the value of his services, although the complaint claimed an express contract which was not substantiated at the trial.
The second question which arises is whether the defendant is bound by the representations of his sales manager. We take as the factual basis of this question the underlying policy of the defendant not to pay commissions, the knowledge of the plaintiff that such was the defendant’s policy, and the representation by the sales manager to pay a commission of no fixed sum without the knowledge of an officer of the defendant. Under these facts, no inference of ratification may be drawn, since the defendant did not have notice of its agent’s representation when it sold the house to plaintiff’s client (cf. Lyle v. Bennett, 34 Misc. 476). Nor is this a case where an agent, possessed of apparent authority, makes an agreement in violation of his secret instructions from his principal (cf. Gold v. Serrell, 6 Misc. 124). Ordinarily, knowledge by a third party of the limitation of authority exercised by an agent exonerates the principal of liability for any act done by the agent in excess of his authority (cf. Stanton v. Hawley, 193 App. Div. 559). But this rule is not invariable, and yields when the principal has placed the agent in such a position that a representation by the agent would be reasonably believed by a person dealing with the agent (see American Exch. Nat. Bank v. Woodlawn Cemetery, 194 N. Y. 116, 121; New York & New Haven R. R. Co. v. Schuyler, 34 N. Y. 30, 49; Tiffany, Principal & Agent [2d ed.], § 17, pp. 45-49; 1 Mechem, Law of Agency [2d ed.], pp. 539-542). Here, the defendant placed its employee in the position of sales manager, and the plaintiff could reasonably believe the statement of the agent that a commission was to be paid for plaintiff’s services (cf. People’s Mercantile Co. v. Farmers’ Cotton Finance Corp., 38 N. M. 237).
*101 The last question is concerned with the value of plaintiff’s services. There was proof presented as to the custom and rule established by the Westchester County Realty Board that the compensation payable on a sale of a house was 5% of the purchase price. The defendant did not agree to that amount, nor was there any proof that the custom or rule was binding on the defendant. Consequently, compensation based on the custom or rule may not be allowed (Wertkin v. De Pasquale, 70 N. Y. S. 2d 225). Moreover, the plaintiff’s wife testified that she did not expect the usual commission. The custom and rule prescribing the compensation of brokers were therefore only some evidence of the value of the plaintiff’s services. The trier of the fact must decide the reasonable value of the services (Matter of Sebring, 238 App. Div. 281, 290; Tubiola v. Baker, 225 App. Div. 420, 421).
Under all the circumstances, I find the reasonable value of plaintiff’s services to be the sum of $850, and direct judgment in favor of the plaintiff accordingly. This opinion may be treated as the decision of the court pursuant to section 440 of the Civil Practice Act.