**NATIONAL SAVINGS & TRUST COMPANY, as Successor Trustee for the Alonzo Bliss Properties, Appellant,**

v.

**B. Franklin KAHN, Appellee.**

**No. 16567.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 30, 1962.

Decided March 15, 1962.

Mr. John J. Wilson, Washington, D. C., with whom Mr. William E. Rollow, Washington, D. C., was on the brief, for appellant.

Mr. Frank F. Roberson, Washington, D. C., with whom Mr. James A. Belson, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Kahn, a licensed real estate broker in the District of Columbia, brought this suit against the National Savings & Trust Company for a commission on its sale of certain real property to the Brotherhood of Carpenters and Joiners in March of 1959. He obtained a judgment pursuant to a jury verdict, and the Bank appeals.

■■ The principal issue at trial was whether Kahn was the "procuring cause" of the sale. The evidence showed that at Kahn's request the Bank gave him a letter, dated May 20, 1958, and signed by its agent Shea, which read as follows:

"This will authorize you to sell lots 805 and 807 in Square 574, Washington, D. C., for One Million Eight Hundred Thousand Dollars ($1,800,000). This is not an exclusive listing and you are not authorized to place a sign upon the property."

The evidence also showed that prior to that authorization another broker had circularized the Union concerning the property in question and that thereafter Kahn made several contacts with the Brotherhood in an effort to procure a sale. The trial court instructed the jury that it could find the Bank liable if it determined that Kahn was the procuring cause of *the negotiations* between the purchaser and seller. And the court also explained that "the procuring cause of a sale of real estate may be said to be that cause which originates a series of events which, without a break in their continuity, results in the accomplishment of the sale to a purchaser ready, willing, and able to buy, upon terms authorized to the broker by the seller." We think these instructions were correct.[1]

But we agree with the Bank that the court erred in further instructing the jury that

"On the other hand, ladies and gentlemen of the jury, if you find from the evidence that the Union was attracted to and interested in the property by the representative of

1. Philbrick v. Chase, 95 N.H. 82, 58 A. 2d 317, 3 A.L.R.2d 526 (1948). See Bryan v. Abert, 3 App.D.C. 180 (1894); Heslop v. Dieudonne, 209 Md. 201, 120 A.2d 669 (1956); Haymes v. Rogers, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.2d 896 (1950).

the defendant Trust Company itself or was attracted to and interested in the property as a result of anything or any agency other than the agency of any of the plaintiffs, and that as a result thereof the said *defendant entered into negotiations with such purchaser for the sale of the property prior to the time that* [*Kahn*] * * *brought the property to the purchaser's attention,* and that the sale of said property was made by the defendant Trust Company as a result and outcome of a continuation of the negotiations *theretofore entered into* and brought about by its own efforts, then your verdict * * * shall be for the defendants.

"In other words, if you are satisfied *from the preponderance of the evidence* that the Union was first attracted to the property as a probable purchaser by its own efforts or the efforts of the Trust Company itself, and that negotiations were entered into between the Union and the Trust Company and *were being carried on prior to the time* [*Kahn*] * * * *undertook to deal with this property,* and that the Union bought the property as a result of said negotiations *theretofore pending* between the defendant Trust Company and itself and that such negotiations continued until the sale was made by the defendant Trust Company, then your verdict must be for the defendant Trust Company. * * *" [Emphasis supplied.]

■ This implied that to be relieved of liability the Bank would have to prove that it began to negotiate with the Union before Kahn brought the property to the Union's attention and continued the negotiation until the property was sold.

But the Bank did not undertake to prove that it initiated negotiations before Kahn contacted the Union nor was such proof necessary under the theory of its defense. That theory was that the Union had known the tract was for sale before Kahn contacted its Site Selection Committee and that this knowledge, rather than Kahn's efforts, prompted the Union to seek out the Bank and to negotiate the purchase.

■ To prove that contention, the Bank presented evidence that before Kahn sought to list the property, the President of the Union had seen it, another broker had sent the Union a map showing several suitable tracts, including this one, and the Union had a blueprint of the property in its files. On this evidence the jury could have found that Kahn's efforts were not the "procuring cause" of the sale. But under the court's instructions the jury may well have believed that it was required to find that Kahn's efforts were the "procuring cause" of the sale, since they preceded the negotiations. Under these circumstances, we cannot agree with appellee that the error was harmless. Accordingly, the judgment must be reversed and the case remanded for a new trial.[2]

Appellant also attacks the court's instruction on the issue of damages. We consider this issue because it may arise upon the new trial which we order. Villaroman v. United States, 87 U.S.App. D.C. 240, 184 F.2d 261 (1950).

■ Kahn's compensation in the event he procured a purchaser was not set out in the agreement. Therefore, the trial court instructed the jury that if it found Kahn was the procuring cause of the sale, it should award him the commission which the evidence showed was "the usual and customary brokerage commission on a sale of this size" in the District of Columbia. The Bank insists that this instruction was erroneous. It asserts that the proper measure of damages is "the fair and reasonable value of the services

---

**2.** By inadvertence, no doubt, the trial court's instructions at one point incorrectly suggested that the Bank had the burden of proving by the "preponderance of the evidence" that the Union was attracted to the property by the Bank's efforts. McCormick, Evidence § 307 (1954).

rendered." We think the trial court's instruction was correct.

■■ Where, as here, the parties to a contract neglect to fix the price that will be paid for personal services, courts usually imply an intent to contract for the value of the performance rendered. See Costigan, Implied in Fact Contracts and Mutual Assent, 33 Harv.L.Rev. 376, 383, 385–89 (1920); 3 Corbin, Contracts § 566 (1960). Even if this action had been brought in *quantum meruit*, as the Bank says and Kahn denies it was, the measure of recovery would be the same: the market value of Kahn's performance.[3] It seems clear to us that the best evidence of the market value of brokerage services is the usual and customary commission which is paid for such services.[4] And, unless it can be shown that the market for these services is rigged, we think there is no difference between such a commission and the "fair and reasonable" value to which the Bank would limit Kahn's recovery.[5]

The Bank argues, however, that the usual rule *governing implied contracts* cannot be applied here. It points out that five days before the Bank's agent, Mr. Shea, signed the agreement upon which this action is based, he rejected a form contract which provided for a commission which the evidence showed was usual and customary. Hence, the Bank argues, to imply that it intended to contract for that commission would be clearly contrary to the evidence. We think this contention, too, must be rejected.

The only evidence concerning this transaction is Kahn's testimony. He tes-tified that Mr. Shea did not object to the commission in the form contract when he enumerated his reasons for rejecting it. Kahn quoted Shea as saying "the only thing I will sign is, I will authorize you to sell this for $1,800,000 and be sure to state it is not an exclusive listing and that you have no right to put up any signs." Upon cross examination, Kahn explained that he did not mention the commission he was to receive or include the terms of his compensation in his draft of the second contract because "he [Shea] suggested to me what he would sign. I didn't make any suggestion [regarding commission]. He made it clear what he would sign." Shea did not testify.

We think these facts do not establish an express refusal to contract for the usual and customary brokerage commission under circumstances that would prohibit the court from instructing the jury as it did. Rather, the evidence shows that the parties failed to agree upon the commission Kahn was to receive.[6] The Bank does not claim that Kahn was to perform brokerage services *gratis;* nor did its agent, who was thoroughly familiar with the real estate business, specify the commission the Bank expected to pay. Under such circumstances, the court was not obliged to let the jury speculate about the commission these parties would have agreed upon had they thought about it. Instead, the court was free to imply the missing term of the contract from the usual practice of brokers and customers in the District of Columbia. We express no opinion concerning the propriety of

3. Corbin, Contracts § 1004 (1951); 5 Williston, Contracts § 1480 (1937); Matthews v. Continental Roll & Steel Foundry Co., 121 F.2d 594 (3d Cir. 1941).

4. See McManus v. Newcomb, 61 A.2d 36 (D.C.Mun.App.1948); Weinreb v. Strauss, 80 A.2d 47 (D.C.Mun.App.1951) (dictum); 8 Am.Jur. Brokers § 146 (1932).

5. Stembler v. Wilson, 175 Md. 667, 3 A.2d 759 (1939); Ingalls v. Streeter, 67 N.Y.S. 2d 351 (Mun.Ct.1946). Contra: Eadie v. Arc Wood Dev. Inc., 19 Misc.2d 98, 189 N.Y.S.2d 340, 341 (Sup.Ct.1959).

Our holding disposes of the apparent contradiction between McManus v. Newcomb, supra note 4, and the dictum in Hecht Co. v. Whiteford, 78 U.S.App.D.C. 134, 137 F.2d 929, cert. denied, 320 U.S. 816, 64 S.Ct. 436, 88 L.Ed. 493 (1943), upon which appellant relies, to the effect that where no commission is specified, a broker who procures a sale is entitled to the "fair and reasonable value" of his services.

6. Compare 3 Corbin, Contract § 564 (1960).

this instruction where there is an unequivocal agreement not to contract for the usual and customary fee.

What we have said disposes, we think, of appellant's contention that the trial court should not have instructed the jury to disregard evidence elicited upon cross examination of appellee concerning "the time spent by the plaintiff, his associates and his employees, in connection with this transaction." Such evidence of the appellee's cost of performance could have no bearing upon the commission to which he was entitled.[7]

Reversed and remanded.

7. The cost of performance may be the proper measure of damages where plaintiff renders part performance and it is impossible to estimate the profits he would have received but for defendant's breach. E.g., Goodman v. Dicker, 83 U.S. App.D.C. 353, 169 F.2d 684 (1948). See generally 5 Corbin, Contracts § 1031 (1951); Restatement, Contracts § 333 (1932). That is not this case.