Madeleine **HARDY–LATHAM**, Appellant,

v.

John H. **WELLONS**, Harry Barnes and
F. Ryan Hunt, Appellees.

No. 11997.

United States Court of Appeals
Fourth Circuit.

Argued April 1, 1968.

Decided June 4, 1968.

Vaughan S. Winborne, Raleigh, N. C., for appellant.

James M. Kimzey, Raleigh, N. C. (Marshall T. Spears, Jr., and Spears, Spears, Barnes & Baker, Durham, N. C., on brief), for appellees.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

A dispute over the proper division of a broker's commission led to this appeal, which raises three separate issues, each governed by the law of a different jurisdiction. Although counsel for the parties failed to show any awareness of the difficulties, it should occasion no surprise that choice of law problems abound in this diversity action which involves a sale, engineered by New York brokers, of a North Carolina business to a New Jersey buyer.

In 1962, defendant John Wellons confided to his long-time business associate Harry Barnes, a New Yorker, that he desired to sell his candy business in Dunn, North Carolina. With Wellons's permission, Barnes relayed this information to his friend F. Ryan Hunt, a New York furniture dealer, not a real estate or business broker, who had had no prior dealing with Wellons. Hunt in turn telephoned plaintiff Madeleine Hardy-Latham, a professional business broker, and informed her that Wellons was discreetly seeking a buyer for his business. Mrs. Hardy-Latham then wrote Wellons, offering her services as a broker in return for five per cent of

the sale price. Accepting this offer by mail, Wellons gave Mrs. Hardy-Latham a non-exclusive listing. After some effort and expense, Mrs. Hardy-Latham located a New Jersey candy manufacturer, who, after direct negotiations with Wellons, purchased the business for $300,000.

Conceding that he owed $15,000 as a brokerage commission, Wellons refused to pay Mrs. Hardy-Latham until he was satisfied that Barnes and Hunt would be adequately compensated for their services. Although he had not entered into any agreement with Barnes and Hunt, he maintained that Mrs. Hardy-Latham had done so, and he apparently felt morally obligated to secure compliance. As a result, Mrs. Hardy-Latham brought this diversity action against Wellons in the Eastern District of North Carolina to recover her $15,000 commission. Hunt and Barnes later moved and were permitted, over her objection, to intervene as parties plaintiff claiming a finder's fee of $7,500, one-half of the commission. Wellons then tendered and paid into court the $15,000 which he acknowledged to be due, plus 6% interest from the date of the sale, and thereupon assumed a passive position, leaving the broker and the two finders to squabble over the proper disposition of the fund.

At a trial before the court sitting without a jury, Barnes and Hunt contended that Mrs. Hardy-Latham had promised to pay them fifty per cent of her commission after deducting expenses. She, on the other hand, claimed that she was obliged to pay only a five per cent "telephone referral" fee, which she testified was her standard payment and that of the trade. The court, finding that there had been no meeting of the minds on this point, adopted a quantum meruit approach and awarded Mrs. Hardy-Latham sixty per cent ($9,000) and Barnes and Hunt forty per cent

($6,000) to be divided between the two men equally as per their admitted arrangement. From this judgment, Mrs. Hardy-Latham appeals.

■ An issue, preliminary to the merits, is whether Barnes and Hunt were properly permitted to intervene in this action inasmuch as there was no diversity of citizenship between them and their real adversary, Mrs. Hardy-Latham, and the amount in controversy was less than $10,000, their maximum claim being only $7,500. This procedural matter is, of course, governed by federal law, which provides that if intervention is as of right, no independent jurisdictional basis need be established. See Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960); 4 Moore's Federal Practice (2nd ed.) ¶ 24.18 [3]. Thus, if Hunt and Barnes had a right to intervene, the indisputably valid diversity jurisdiction in the main action will suffice to support jurisdiction over their claim.

■ Rule 24(a) of the Federal Rules of Civil Procedure allows intervention upon timely application,

"when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Hunt and Barnes fit precisely within this provision. They claim an interest in both the transaction and the fund which are the subject of the main action, and if the entire amount were paid directly to Mrs. Hardy-Latham, their ability to collect their proper share would as a practical matter be more difficult. Since, therefore, their intervention was as of right, there is here no jurisdictional problem and the District Court acted correctly in granting their motion to intervene.[1]

1. The result would be the same under the former Rule 24, which was in effect at the time intervention here was sought but amended in 1966. That rule, which was essentially identical on this issue, allowed intervention as of right "when the appli-

Plaintiff-appellant next complains that the quantum meruit recovery of the intervening plaintiffs was excessive. Prerequisite to an adjudication of this issue is a determination of the proper body of law to be applied. In diversity actions, the District Court is bound to apply the forum state's choice of law principles. Nolan v. Transocean Air Lines, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although the matter has not been briefed by counsel, independent study [2] satisfies us that the North Carolina rule is that the consequences of contractual obligations entered into and to be performed in the same state must be determined by the law of that state. See Fast v. Gulley, 271 N.C. 208, 155 S.E.2d 507 (1967); Davis v. Davis, 269 N.C. 120, 152 S.E.2d 306 (1967); Roomy v. Allstate Insurance Co., 256 N.C. 318, 123 S.E.2d 817 (1962). In the instant case, Hunt and Barnes, both New York residents, contacted Mrs. Hardy-Latham, another New Yorker, in that state and correctly anticipated that her performance as well as their own would be exclusively in the Empire State. Thus, there can be no question that it is New York's law which governs the proper division of the $15,000 commission.

Under New York's Statute of Frauds, the oral agreement between Hunt and Mrs. Hardy-Latham is unenforceable. N.Y.General Obligations Law, McKinney's Consol.Laws, c. 24–A, § 5–701, subd. 10.[3] Moreover, since the design of the statute is to avoid the dangers inherent in claims for commissions by finders or brokers on oral testimony without a sufficient written memorandum, the New York Court of Appeals has recently held that to allow recovery for the reasonable value of the services rendered would undermine the legislative purpose. Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E. 2d 793 (1966). Thus, overruling a line of intermediate appellate decisions, the court precluded recovery under quantum meruit when the requirements of the Statute of Frauds have not been met.

The cited decision would be dispositive of the instant case were it not for the failure of plaintiff's counsel to plead the Statute of Frauds as required by F.R.Civ.P. 8(c). As a result, under F.R.Civ.P. 12(h), plaintiff must be held to have waived this objection, and we reach the merits of the intervenors' claim.

Neither side disputes the court's clearly correct finding of fact that there was no agreement reached between Hunt and Mrs. Hardy-Latham as to the compensation she would pay the finders. In New York, absent Statute of Frauds considerations, "where a litigant fails to establish the right to recover upon an express contract he may, in the same action, recover in quantum meruit." Smith v. Kirkpatrick, 305 N.Y. 66, 73, 111 N.E.2d 209,

---

cant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control of the court or an officer thereof."

2. Federal courts may judicially notice the laws of all the states in this country. Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94 (1885); J. M. Blythe Motor Lines Corp. v. Blalock, 310 F.2d 77 (5th Cir. 1962).

3. N.Y.General Obligations Law § 5–701 declares:
"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or his lawful agent, if such agreement, promise or undertaking:
\* \* \* \* \*
"10. Is a contract to pay compensation for services rendered in negotiating \* \* \* the purchase, sale, exchange \* \* \* of a business opportunity, business, its good will, inventory \* \* \*. 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction."

213 (1953). Quantum meruit is available where services are performed pursuant to a contractual relationship and benefits conferred by one party are retained by another. See McKeon v. Van Slyck, 223 N.Y. 392, 119 N.E. 851 (1918). The District Court was therefore correct in adopting a quantum meruit approach in the instant case where Hunt and Barnes supplied Mrs. Hardy-Latham the name of a seller and the details of his business under circumstances indicating an agreement to pay for such information should she put it to profitable use.

■ The reasonable valuation of a broker's commission determined on a quantum meruit basis is a question for the trier of fact. See McKeon v. Van Slyck, *supra;* Eadie v. Arc Wood Development, 19 Misc.2d 98, 189 N.Y.S.2d 340 (1959); Gibson v. Archer Productions, 281 App.Div. 661, 117 N.Y.S.2d 438 (1952). The District Court did make such a finding here, and under F.R.Civ.P. 52(a) the finding is not to be disturbed unless "clearly erroneous."

The only evidence as to the customary finder's fee is that offered by Mrs. Hardy-Latham. She testified that the customary fee is five per cent of the commission if the finder merely made a telephone call referring the seller to the broker. The intervenors offered no testimony on quantum meruit or the custom of the trade, but relied solely on their alleged agreement with the plaintiff, which the judge found had not been established. But Barnes played a more significant role in this case. The evidence showed that Wellons relied heavily on Barnes's discretion and recommendations. Wellons did not want to make public his desire to sell, and it was in the strictest confidence that he revealed his intention to his business friend and advisor of many years standing. Had it not been for this trust, Mrs. Hardy-Latham would never have learned of the possibility of a sale. More importantly, Wellons agreed to deal with this particular broker only because of assurances by Barnes, who had relied on Hunt's representations that she was a responsible and reputable broker. Thus, without these finders, Mrs. Hardy-Latham would not have learned of the available business, and even if she had, without the positive sponsorship by Barnes and Hunt, she would not have been retained as a broker. In addition, the District Court was clearly entitled to doubt Mrs. Hardy-Latham's testimony regarding the standard referral fee, since at the same time she submitted a preposterous expense account, claiming that she worked exclusively on this sale in excess of eight hours a day, plus Saturdays, Sundays and evenings from October, 1962, until May, 1963. Accordingly, she charged against this venture, among other things, almost two-thirds of the rental for this period on her three-and-one-half room apartment which she used also as an office; bills of $99 and $87 from a fashionable ladies' apparel shop where she claimed to have purchased Christmas gifts for prospective buyers; and $85 a week for secretarial fees as yet unpaid but said to be owing to a personal friend who stopped at the apartment upon occasion and when needed typed business letters for Mrs. Hardy-Latham.

At the same time it must be recognized that Barnes had no direct contact with Mrs. Hardy-Latham, and after Hunt, who was otherwise fully employed, phoned her, he exerted no further effort to effect a sale of the business. Hunt disavowed any willingness on the part of either finder to share in the expenses incurred in promoting the sale.

■ In light of these competing considerations, we think the District Court's evaluation of the finders' services is so disproportionately high that it cannot stand. A more just allowance would be twenty per cent to Barnes and Hunt and eighty per cent to the plaintiff. This reflects the fact that while the intervenors' role was more instrumental than the usual telephone reference, the actual production of a customer and all of the effort and incidental expense—

whatever it was—came from the plaintiff. Each of the finders will be entitled to $1,500, which is a handsome reward for their minimal efforts.

There remains the question of interest on the $15,000. Thirteen months after plaintiff filed her complaint, defendant Wellons, pursuant to an order of the District Court, deposited in court $15,000 plus interest at the rate of 6% per annum from the time of the consummation of the sale, twenty-six months earlier. After the passage of two more months, he moved for a remittitur of a portion of the interest included in the tender. Defendant claimed that because of his good faith efforts to accommodate all parties by setting up escrow funds and mailing the money back and forth to New York, he had been unable to accumulate interest on the $15,000 at any rate approaching the statutory 6%. He therefore requested that all money representing unearned interest be returned to him. Over plaintiff's objection, the court granted the remittitur and ordered the return of $854.63 to the defendant. On appeal, plaintiff seeks the restoration of that sum to the fund here in contest.

 The interest question is governed by the law of the forum state, North Carolina, where the contract between Wellons and Mrs. Hardy-Latham was made and where Wellons delayed making the payment admittedly due her. See Herd & Co. v. Krawill Machinery Corp., 256 F.2d 946 (4th Cir. 1958), aff'd, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); see also Roberts v. McNeely, 52 N.C. 506, 78 Am.Dec. 261 (1860).

 The legal rate of interest in North Carolina is six per cent per annum, N.C.Gen.Stat. § 24–1, and, absent an agreement between the parties, this is the rate due on money owed under a contract. See N.C.Gen.Stat. § 24–5;

see also Security National Bank v. Travelers' Insurance Co., 209 N.C. 17, 182 S.E. 702 (1935). No discretion appears to be vested in the court to determine what shall be the rate of interest in a given case.[4] See N.C.Gen.Stat. § 24–7. Moreover, to constitute a valid tender in North Carolina and thus stop the running of interest, the offer must include the full amount the creditor is entitled to receive plus *all* interest to the date of tender. See Ingold v. Phoenix Assurance Co., 230 N.C. 142, 52 S.E.2d 366, 8 A.L.R.2d 1439 (1949).

 We conclude, therefore, that the District Court erred in setting a rate inconsistent with the mandate of the law and in remitting a portion of the interest deposited as required. It should be noted that even if the court had discretion in this matter, this was not an appropriate occasion for its exercise. The defendant was without legal justification in refusing to pay his broker on the date the sale was consummated, in accordance with their agreement. The delay in payment was solely the product of his desire to make certain that his friends received a share of the commission which he had promised only to Mrs. Hardy-Latham. However worthy his sentiments of loyalty, since he failed to live up to his contract, he is chargeable with the legal rate of interest on the amount owed from the date the debt matured until he made the tender, as he correctly recognized initially when he included full interest.

The District Court ordered plaintiff and intervenors, but not Wellons, to pay costs in proportion to their respective allowance. We adopt this formula for the costs below and in this court.

We remand the case for modification of the judgment consistent with this opinion.

Remanded.

---

4. If New York law were applicable, the result would be the same since this is a legal, as opposed to an equitable, cause of action. *See* N.Y.C.P.L.R. §§ 5004, 5001 (a); N.Y.General Business Law, McKinney's Consol.Laws, c. 20, § 370.