**Bernard R. KOSSAR, Plaintiff,**

v.

**O. Bruton SMITH; William J. Gardner; and Gardner–Smith Associates, a North Carolina General Partnership, Defendants.**

No. C–C–90–359–P.

United States District Court, W.D. North Carolina, Charlotte Division.

May 31, 1991.

Allain C. Andry, IV, Thomas B. Henson, Robinson Bradshaw & Hinson, P.A., Charlotte, N.C., for plaintiff.

Fred T. Lowrance, Nickolas J. Sojka, Jr., Parker Poe Adams & Bernstein, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Plaintiff's motion, filed March 13, 1991, for summary judgment on his claim and the counterclaim of Defendants Smith and Gardner–Smith Associates.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The record in this matter indicates that Plaintiff was the President of Home Quarters Warehouse, Inc. In late 1986, Home Quarters desired to open a store in Columbia, South Carolina. However, no attractive sites were available. Because Home Quarters did not desire to get into the real estate development business, it gave Plaintiff permission to put together a development package. It was understood by Home Quarters and Plaintiff that any efforts on this project were to be conducted by Plaintiff outside his role as President of Home Quarters.

Thereafter, Plaintiff came in contact with Defendant Gardner. Gardner then introduced Plaintiff to Defendant Smith. After discussions between the parties, the two individual Defendants formed the partnership Defendant Gardner–Smith Associates for the purpose of developing a site for Home Quarters. Ultimately, the Broad River Commons Shopping Center in Columbia, South Carolina was built with Home Quarters occupying retail space therein.

A short time later, Plaintiff and Defendants became involved in a dispute regarding Plaintiff's ownership interest in the Broad Rivers project. Plaintiff claimed that the parties had agreed that he would retain a one-third interest in the project for his role in bringing Defendants together with Home Quarters. On May 1, 1987, Plaintiff entered into a Settlement Agreement with Defendants whereby Plaintiff received a promissory note in the amount of $300,000.00 in exchange for his release of Defendants of any liability incurred in connection with the Broad Rivers project.

The note became due three (3) years after being signed by the parties or on May 1, 1990, but Defendants failed to tender payment to Plaintiff. Plaintiff, on November 2, 1990, gave notice pursuant to N.C. Gen.Stat. § 6–21.2 to Defendants of his intention to seek attorney's fees if payment was not received within five (5) days. When Defendants failed to make the payment, Plaintiff, on November 19, 1990, filed the complaint in this action alleging that Defendants were obligated to him for the amount of the note, interest at the rate of 8% per anum up to May 1, 1990 and 18% per anum for the period of time thereafter, and attorney's fees in the amount of 15% of the principal plus interest.[1]

On January 31, 1991, Defendants filed an answer and counterclaim to the complaint. Defendants essentially admit that payment of the note is due, the principal due on the note is $300,000.00, and they have failed to make the payment. *See Defendants' Answer*, filed January 31, 1991, on page 2 at par. 4 and 6. As an affirmative defense and counterclaim, however, Defendants contend that they are entitled to set-off the

---

1. Defendant Gardner could not be located to serve with the complaint, but both Defendants Smith and Gardner–Smith Associates were served and filed answers. Hereinafter, reference to "Defendants" is to Defendants Smith and Gardner–Smith Associates only.

amount owed under the note by a claim they have against Plaintiff. Defendants assert that in late 1986 during a meeting in New York City, Plaintiff entered into an oral agreement whereby Defendants were given the exclusive right "to be the exclusive developer for new Home Quarters Warehouses." *Id.* on page 3 at par. 3. When Home Quarters opened new stores in Charlotte and Gastonia, Defendants were not permitted to be the developer for those stores.

Defendants, on April 1, 1991, filed a memorandum in opposition to Plaintiff's motion for summary judgment. On April 8, 1991, Plaintiff filed a memorandum in support of its motion. Defendant, on April 29, 1991, filed a reply memorandum in opposition to Plaintiff's motion. On May 9, 1991, the Court permitted Plaintiff to amend its reply to the counterclaim to include a statute of frauds defense. A supplemental memorandum in support of the motion was filed on May 15, 1991 by Plaintiff in response to the deposition of Defendant Smith. Defendant, also on May 15, 1991, filed a supplemental memorandum in opposition to the motion. On May 17, 1991, Defendant filed an additional supplemental brief in opposition to the motion addressing Plaintiff's statute of frauds defense.

The Court has carefully reviewed the motion, the memoranda in support and opposition to the motion, the affidavits of Plaintiff and Defendant Smith, and the deposition of Defendant Smith. Based on that review, the Court concludes for the reasons enunciated below that there are no genuine issues of material fact in dispute regarding Plaintiff's claim in the complaint. Thus, summary judgment is appropriate as to the note. The Court further concludes that the oral agreement which is the basis of Defendants' counterclaim and affirmative defense is unenforceable as a matter of law pursuant to the statute of frauds. Accordingly, summary judgment in favor of Plaintiff is appropriate as to the entire matter.

## II. APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences from the facts in light most favorable to the party opposing the motion for summary judgment. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356–57; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational factfinder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## III. DISCUSSION.

Defendants readily admit in their answer that Plaintiff is entitled to recover under the note unless set-off from the oral agreement is appropriate. Therefore, the primary issue before the Court is whether an issue of fact is in dispute regarding Plaintiff's obligations under the oral agreement giving Defendants the exclusive right to

develop Home Quarters stores in the southeast.

The Court believes the record as a whole does not support Defendants' contention that an oral agreement existed. The terms of the supposed agreement are vague casting doubt on Defendants' belief that there was a meeting of the minds. For example, in Defendant Smith's affidavit, he states that the agreement provided that Defendants would be "granted the right to develop new Home Quarters Warehouse stores in *North Carolina and South Carolina,* as well as other areas. . . ." *See* Defendant Smith's Affidavit, filed April 1, 1991, at par. 8 on page 2–3. In his deposition, Defendant Smith extended the territory to include Virginia as well. *See* Deposition of Defendant Smith at 94. The Court questions whether it was possible for a meeting of the minds to have occurred with essential terms of the agreement such as the applicable territory undefined.

The Court further doubts whether Plaintiff was a party to the agreement. The agreement granted to Defendants the exclusive right to develop Home Quarters stores. From the record, it appears that Plaintiff was acting as an agent of Home Quarters when the agreement was formed. Therefore, Plaintiff could not be held personally liable for a contract breach by Home Quarters. *See Smith v. State,* 289 N.C. 303, 222 S.E.2d 412, 431 (1976); *Tinkham v. Hall,* 47 N.C.App. 651, 267 S.E.2d 588, 591 (1980). If Home Quarters permitted Plaintiff to act as a broker in bringing the parties together and Plaintiff failed to carry out those duties, Defendants' cause of action would be for tortious interference of contract, malfeasance, or fraud. ·Defen-

dants, however, only pleaded a breach of contract claim.

Nonetheless, the Court is required to view the facts in a light most favorable to Defendants, the non-moving party. Accordingly, the Court will assume for purposes of this motion that an oral agreement was entered into by Plaintiff and Defendants in late 1986 in which Defendants were granted the exclusive right to develop the Home Quarters stores in North Carolina and South Carolina. This agreement would have included the stores in Charlotte and Gastonia that were developed without the involvement of Defendants.

Plaintiff has raised as a defense to the oral agreement the statute of frauds provision found at N.C.Gen.Stat. § 75–4. Because there is no dispute that the agreement was oral and limits Home Quarters' right to do business in North Carolina, Plaintiff contends that the agreement is unenforceable because it is not in writing. Defendants have responded to this defense by stating that the agreement was formed in New York, and thus the laws of that state govern the agreement. Because the Court is viewing the facts in a light most favorable to Defendants, the Court will apply New York law.[2]

New York has codified its statute of frauds provision at N.Y.Gen.Oblig. § 5–701 (McKinney 1991). That statute provides in pertinent part:

a. Every agreement, promise or under taking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

**2.** In Plaintiff's amended reply to the counterclaim, he pleads as the first affirmative defense, "The agreement as alleged in the counterclaim violates the statute of frauds and the provisions of N.C.G.S. § 75–4". Although Plaintiff has not specifically raised the applicable New York statute, the Court believes that the reply is sufficient by stating the counterclaim violates the statute of frauds. Rule 8(f) of the Federal Rules of Civil Procedure provides, "All pleadings shall be so construed as to do substantial justice".

When Plaintiff filed its amended reply, it was not aware that Defendants would contend that

the agreement was formed in New York. The applicable statute of frauds in New York is substantially similar to that of North Carolina. The Court believes Defendants had adequate notice that Plaintiff intended to rely on the statute of frauds no matter which state law was applicable. Therefore, the Court does not believe Defendants have been prejudiced by Plaintiff failing to explicitly cite the applicable New York statute. The means of accomplishing justice in this case is for the Court to construe Plaintiff's amended reply to include the applicable New York statute of frauds provision.

10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, *or a business opportunity,* business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes *procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction ...* (emphasis added).

The historical notes of the statute indicate that subparagraph 10 was included in the statute in order to "[m]ake clear that the contracts required to be evidenced by writing include a contract or agreement for the compensation of a business broker for acting as a 'finder,' 'originator' or 'introducer,' or for assisting in the negotiation or consummation of the transaction...." *See* N.Y.Gen.Oblig. § 5–701, at Historical Notes; *see also McKinney's 1964 Session Laws of New York,* at p. 1796. It is clear from the language of the statute and the historical notes that oral agreements in which a party negotiates a business opportunity on behalf of another party are unenforceable as a matter of New York law.

■ The statute applies to various kinds of intermediaries who perform limited services in the consummation of certain kinds of commercial transactions. *See Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 372 N.E.2d 12, 16, 401 N.Y.S.2d 176, 180 (1977). The Court of Appeals of New York has interpreted the statute in a fairly broad manner. *Id.* 372 N.E.2d at 16, 401 N.Y.S.2d at 181. "Too restrictive an interpretation would defeat the purpose of the legislation". *Id.* Where an intermediary's activity is so evidently that of providing "know-how" or "know-who", in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise, the statute should be read in accordance with its plain meaning and its evident purpose of preventing a party from fraudulently claiming the existence of an oral agreement. *Id.* (granting summary judgment motion on oral agreement in which plaintiff participated in obtaining construction contract for defendant); *see also Newman v. Crazy Eddie, Inc.,* 119 A.D.2d 738, 501 N.Y.S.2d 398, 398 (N.Y.App.Div.1986).

The Fourth Circuit, in interpreting New York's statute of frauds provision, has held that an oral agreement between a broker and purchaser of a business is unenforceable. *See Hardy–Latham v. Wellons,* 415 F.2d 674, 677 (4th Cir.1968); *see also Soviet Import Export, Inc. v. General Tire International Co.,* 586 F.2d 5, 5–6 (6th Cir.1978) (granting defendant's summary judgment motion on oral agreement in which plaintiff was to receive "finder's fee").

Defendants have stated that Plaintiff was "engaged in 'side deals' and 'making deals for himself' ". *See* Defendants' Supplemental Memorandum, filed May 15, 1991, at 5 (citing Defendant Smith's Dep. at 25 and 29). Moreover, Defendants characterized Plaintiff's side deal as similar to his role in finding a developer for the Broad Commons project. *Id.* Accordingly, the Court believes that the agreement required Plaintiff to act as a broker in finding developers for Home Quarters stores. Moreover, there is no dispute that the agreement was oral. *See* Defendant Smith's Dep. at 71 (Defendant Smith stating, "The only thing I know (in reference to the agreement) was oral"). Thus, the agreement falls within the ambit of N.Y.Gen. Oblig. § 5–701(a)(10).

The rationale of the statute becomes evident by examining this case. Defendants are clearly liable to Plaintiff for the amount of the note. Without an adequate defense available, Defendants have attempted to rely on an oral agreement which is suspect at best. The statute, in anticipating fraudulent oral agreements, is designed to avoid such bogus claims. "[T]he design of the statute is to avoid the dangers inherent in claims for commission by finders or brokers on oral testimony

without a sufficient written memorandum." *Hardy–Latham*, 415 F.2d at 677.

Because there is no writing available attesting to the oral agreement, the agreement is invalid under the New York statute of frauds, and is thus unenforceable. Accordingly, Plaintiff is entitled to summary judgment on Defendants' affirmative defense and counterclaim of a set-off against the note. Therefore, the Court will grant summary judgment in favor of Plaintiff on both the claim and the counterclaim/affirmative defense.

Under the note, Plaintiff is entitled to interest on the principal at 8% per anum up to May 1, 1990 and 18% per anum for the period of time thereafter. Pursuant to N.C.Gen.Stat. § 6–21.2, Plaintiff is entitled to attorney's fees in the amount of 15% of the principal plus interest. Accordingly, the Court will include the payment of interest and attorney's fees in the Judgment as provided in the note and § 6–21.2.

## IV.  ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's motion for summary judgment on his claim and the counterclaim of Defendants Smith and Gardner–Smith Associates be, and hereby is, GRANTED.

